**Deborah A. and David R. TUTTLE, Appellants,**

v.

**Sylvester W. and Mary Lou MUENKS, and Roadway Express, Inc. Respondents.**

No. WD 56969.

Missouri Court of Appeals, Western District.

May 2, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 27, 2000.

Scott Weston Mach, Kansas City, for respondent Roadway.

Fred R. Bunch, Clinton, for appellants.

Before Chief Judge PATRICIA BRECKENRIDGE, Presiding, Judge LAURA DENVIR STITH and Judge ALBERT A. RIEDERER.[1]

LAURA DENVIR STITH, Judge.

Plaintiffs–Appellants Deborah and David Tuttle appeal the trial court's grant of summary judgment to Defendants–Respondents Roadway Express, Inc. and Sylvester and Mary Lou Muenks on the Tuttles' claims for personal injuries and loss of consortium arising out of a truck accident. The trial court held that the broad language used in the indemnity provision contained in two partial releases of the Muenks which the Tuttles had signed effectively released all of their claims against the Muenks and their claims against Roadway based on vicarious liability. We concur with the Tuttles that this was error, in that the language relied on by the trial court conflicted with other language in the releases specifically reserving the Tuttles' claims against the Muenks for Mrs. Tuttle's injuries, and against Roadway for all of their injuries. This created an ambiguity which must be resolved by resort to extrinsic evidence in order to determine the parties' intent. Accordingly, summary judgment based on the release was erroneous and we reverse and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Tuttles allege that they were involved in an automobile accident with Sylvester Muenks on September 6, 1991, and that, due to the negligence of Mr. Muenks, they suffered severe injuries for which they are seeking recovery. In addition, the Tuttles claim that, at the time of the

Lawrence Paul Warshaw, Kansas City, for respondents Muenks.

1. Judge Riederer was a member of the panel at the time of submission of this case, but was no longer a member of the Court at the time this case was decided.

accident, Mr. Muenks was acting in the course and scope of his employment for Roadway Express, Inc., and therefore made claims against Roadway for damages based both on Roadway's vicarious liability[2] and on Roadway's direct liability for negligent hiring and supervision[3].

On March 25, 1995 both David and Deborah Tuttle executed partial releases of their claims against Sylvester Muenks, Mary Muenks, and Shelter Mutual Insurance Company (hereinafter collectively referred to as "the Muenks") arising out of the accident. Mr. Tuttle released his own personal injury claim, for which he received $48,447.40, and Mrs. Tuttle released her loss of consortium claim for the injuries to Mr. Tuttle resulting from the accident, for which she received $500. By the release, Mrs. Tuttle did not release her own personal injury claim against either Roadway or the Muenks, nor did Mr. Tuttle release his loss of consortium claim as to any of them related to the injuries to his wife. In addition, both of the Tuttles specifically stated that they reserved their claims against Roadway. In the next paragraph, however, in language which forms the heart of this appeal, both releases stated the Tuttles would indemnify the Muenks for any claims made against them by anyone arising out of the accident.

The trial court initially granted summary judgment to Roadway on the vicarious liability claims. We reversed and remanded, finding the question whether Mr. Muenks was acting in the scope and course of his employment to be one of fact. *Tuttle v. Muenks*, 964 S.W.2d 514, 519–20 (Mo.App. W.D.1998). On remand, Roadway denied liability and filed a cross-claim against Mr. Muenks for indemnification as to those Counts which stated a claim against it based on its alleged vicarious liability for Mr. Muenks' negligence. In turn, Mr. Muenks filed a counterclaim against Plaintiffs for contractual indemnity based on the paragraph of their releases

stating that in return for the settlement the Plaintiffs would indemnify the Muenks from any claims that might be made against them as a result of the accident.

The Muenks and Roadway then filed motions for summary judgment claiming that, because of Plaintiffs' agreement to indemnify the Muenks for their losses arising from this litigation, any recovery Plaintiffs might obtain from Roadway or the Muenks would have no practical effect in that Plaintiffs would have to turn over that money to the Muenks to satisfy their own indemnification obligation should the Muenks be found liable on Roadway's cross-claim or on the Plaintiffs' claims against the Muenks for Mrs. Tuttle's personal injuries.

Finding the language of the release agreements unambiguous, the trial court granted the motions for summary judgment against Plaintiffs on Counts I through IV of their First Amended Petition. More specifically, the trial court found that, because those claims were based on respondeat superior, and in light of the release agreements, it could offer no practical relief to Plaintiffs. The court's judgment became final when the Tuttles voluntarily dismissed the other claims in their Petition. This appeal followed.

## II. STANDARD OF REVIEW

On appeal from a summary judgment, we review the record in the light most favorable to the party against whom the judgment was made. *Behlmann Pontiac GMC Truck, Inc. v. Harbin*, 6 S.W.3d 891, 892 (Mo. banc 1999). "Summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Stanley v. City of Independence*, 995 S.W.2d 485, 486 (Mo. banc 1999). Accordingly, we review the legal issue before us *de novo. Id.*

---

**2.** Counts I through IV of Plaintiffs' First Amended Petition.

**3.** Counts V through VII of Plaintiffs' First Amended Petition.

### III.  LEGAL ANALYSIS

■ Our determination whether the trial court erred in granting summary judgment to Defendants turns on the language of the releases signed by Plaintiffs Deborah and David Tuttle. " 'In construing a release, as with any contract, the intention of the parties governs and any question concerning the scope and extent of the release is to be determined by what may fairly be said to be in the parties' contemplation, which in turn is resolved in the light of all the surrounding facts and circumstances under which the parties acted.' " *Givens v. U.S. Nat'l Bank of Clayton*, 938 S.W.2d 679, 681 (Mo.App. E.D. 1997), *quoting, Slankard v. Thomas*, 912 S.W.2d 619, 624 (Mo.App. S.D.1995). Where the language used in a release is plain and unambiguous, we will determine that intent based on the contract's language, and not based on parol or extrinsic evidence. *Id.See also Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 67 (8 th Cir. 1994). In determining whether the language is ambiguous, however, we do not look at provisions in isolation, but rather look at the document as a whole. If language which appears plain considered alone conflicts with other language in the contract, or if giving effect to it would render other parts of the contract a nullity, then we will find the contract to be ambiguous. *Id.* Where a contract is ambiguous, then a question of fact arises as to the intent of the parties as to its meaning. Where such a fact issue exists as to the parties' intent, it is error to grant summary judgment. Rather, the determination of the parties' intent should be left to the jury. *Id.; Graham v. Goodman*, 850 S.W.2d 351, 354–56 (Mo. banc 1993).

■ Here, Defendants argue that the releases are unambiguous and clearly provide that the Tuttles will indemnify the Muenks for all claims against them arising out of the accident. This would include indemnification as to any judgments against the Muenks directly, as well as any judgment which Roadway obtains on its cross-claim against the Muenks should Roadway be found liable based on vicarious liability for Mr. Muenks' negligence. Thus, Defendants argue, it would be futile for the Tuttles to proceed against Roadway or the Muenks on any of their claims (other than their claim against Roadway for its own negligence), for even if they recovered a judgment, they would be required to indemnify the Muenks for the resulting judgment.

Since Defendants' argument depends on the language of the release agreements, we turn to an analysis of them. Both David and Deborah Tuttle executed release agreements. In her release Mrs. Tuttle agreed, in relevant part, that in return for $500 she would release her claim for the loss of consortium of her husband due to the accident, as follows:

release, acquit and forever discharge Sylvester Muenks, Mary Muenks and Shelter Mutual Insurance Company and their agents, servants, successors, heirs, executors, administrators and all other persons, firms, corporations, associations or partnerships of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service and expenses, and compensation whatsoever, which the undersigned now has or which may arise hereafter, known and unknown, foreseen and unforeseen *loss of consortium injuries and the consequences thereof* resulting or to result from the event which occurred on or about September 6, 1991, in Cole County, Missouri.

*The undersigned does not release and specifically reserves the cause of action for her own personal injury claim and the cause of action against Roadway Express, Inc. for loss of consortium due to the personal injuries sustained by her husband, David R. Tuttle.*

As further consideration for the sums paid in exchange for the aforementioned Release, Deborah A. Tuttle agrees to defend, protect, indemnify, and hold

harmless Sylvester Muenks, Mary Muenks and Shelter Mutual Insurance Company and any parties released hereunder, *from any and all losses, costs and expenses, and all claims, demands, damages, liabilities, causes of action or judgments which may result from or be the consequence, directly or indirectly, of the incident described above ...*

(emphasis added).

Similarly, Mr. Tuttle agreed that in return for payment of $48,447.40 he would release his own personal injury claim, as follows:

release, acquit and forever discharge Sylvester Muenks, Mary Muenks and Shelter Mutual Insurance Company and their agents, servants, successors, heirs, executors, administrators and all other persons, firms, corporations, associations or partnerships of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service and expenses, and compensation whatsoever, which the undersigned now has or which may arise hereafter, known and unknown, foreseen and unforeseen *bodily and personal injuries and the consequences thereof* resulting or to result from the event which occurred on or about September 6, 1991, in Cole County, Missouri.

*The undersigned does not release and hereby specifically reserves the cause of action for loss of consortium due to the personal injuries sustained by my wife Deborah A. Tuttle. The undersigned does not release and hereby specifically reserves the cause of action for his personal injury claim against Roadway Express, Inc.*

As further consideration for the sums paid in exchange for the aforementioned Release, David R. Tuttle agrees to defend, protect, indemnify, and hold harmless Sylvester Muenks, Mary Muenks and Shelter Mutual Insurance Company and any other parties released hereunder, *from any and all losses, costs and expenses, and all claims, demands, damages, liabilities, causes of action or judgments which may result from or be the consequence, directly or indirectly, of the incident described above ...*

(emphasis added).

As is evident, in the first paragraph of her release, hereinafter referred to as the Release Paragraph, Mrs. Tuttle thus specifically released her claim for her loss of consortium, but did so only as against the Muenks and their insurer. Similarly, in the Release Paragraph of his release, Mr. Tuttle specifically released only his claim for his own personal injuries as against the Muenks and their insurer.

In the second paragraph of her release, hereinafter referred to as the Reservation Paragraph, Mrs. Tuttle specifically reserved her own personal injury claim, as well as her loss of consortium claims as against Roadway. Similarly, in the second paragraph of his release, Mr. Tuttle specifically reserved his own loss of consortium claim, as well as his personal injury claim as against Roadway.

In other words, in the Release and Reservation Paragraphs of their releases, **both** Tuttles released the Muenks from their claims for **Mr.** Tuttles' injuries, but reserved their claims against the Muenks for **Mrs.** Tuttles' injuries. In addition, both Tuttles reserved their claims against Roadway as to **both** their own injuries and their loss of consortium claims.

If the releases ended here, they would not be ambiguous. They would have a clear meaning, and we could give effect to all of their terms. However, both releases contain a third paragraph, which we will refer to as the Indemnity Paragraph, the language of which conflicts with that in the Release and Reservation Paragraphs.

More specifically, although the Release Paragraphs take pains to specifically release only limited claims and only against the Muenks and their insurer, and although the Reservation Paragraphs very

specifically and clearly reserve the Tuttles' claims against Roadway on all theories and against the Muenks on the claims relating to Mrs. Tuttles' injuries, the Indemnity Paragraphs appear to, in effect, release all of those claims too except insofar as Roadway may be directly negligent.

Thus, the Indemnity Paragraph states that the Tuttles will protect the Muenks from, "any and all losses ... or judgments which may result from or be the consequence, directly or indirectly, of **the incident** described above" (emphasis added). Read alone, Defendants argue, this provides indemnity to the Muenks not just for losses or judgments against them arising out of the claims which the Tuttles had just released in return for compensation, but also for any other claims against them which might arise out of the incident.

If read as broadly as Defendants suggest, this would mean that, if the Tuttles recovered a judgment against the Muenks on the claims they specifically reserved against them for Mrs. Tuttle's injuries and for Mr. Tuttles' loss of consortium arising therefrom, then the Muenks would be entitled to indemnity from the Tuttles for the amount of that judgment. In other words, the Tuttles would have to themselves pay any judgment they obtained against the Muenks.

Similarly, although both of the Tuttles specifically reserved their claims against Roadway for each of their claims for personal injuries and for loss of consortium arising out of Mr. Muenks' negligence, if they recovered against Roadway on any of those claims, Roadway would be entitled to indemnity from Mr. Muenks, and Mr. Muenks would, in turn, under the agreement, be entitled to indemnity from the Tuttles. Thus, again, the Tuttles would be responsible to themselves pay any damages they obtained in a judgment against Roadway on a vicarious liability theory.[4] And, in return for this broad grant of indemnity from all of her claims, some of which were quite serious, Mrs. Tuttle would have received $500.

The court below adopted Defendants' interpretation of the Indemnification Paragraph, and on this basis granted summary judgment to Roadway and the Muenks on all theories except those asserting the direct negligence of Roadway. We find that the court erred in so ruling.[5]

In determining the intent of the parties to a contract, we review the terms of a contract as a whole, not in isolation. *Ringstreet Northcrest, Inc. v. Bisanz*, 890 S.W.2d 713, 718 (Mo.App. W.D.1995). In addition, "each term is construed to avoid an effect which renders other terms meaningless." *Id.* *See also, AJM Packaging*

4. While the fact that the Muenks obtained a release from certain claims would normally protect them from a claim for indemnity from another tortfeasor in regard to those claims, Section 537.060 specifically provides that settlement does not operate to prevent an indemnity claim where the claim is based on either contractual indemnity or vicarious liability. Sec. 537.060 RSMo 1994.

5. Although Plaintiffs–Appellants do not raise this issue in their brief, we note that an argument could have been made that the trial court acted prematurely in granting summary judgment because, even under Defendants' interpretation of the contract, until and unless the Tuttles recover a judgment against Roadway, and Roadway seeks reimbursement from Mr. Muenks, no right to indemnity as to the claim against Roadway would arise, and until the Tuttles seek recovery from the Muenks for Mr. Tuttle's injuries, their right to indemnity on that claim would not arise. *See, e.g., Burns & McDonnell v. Torson Const.*, 834 S.W.2d 755, 758–59 (Mo.App. W.D.1992). The court below and the parties perhaps ignored this issue because, here, where the Tuttles, the Muenks and Roadway are all parties to this action and the defendants have filed cross-claims and counterclaims based on the indemnity provisions of the contract, it is evident that this issue will need to be addressed immediately upon a jury finding in favor of the Tuttles. If the issue were resolved unfavorably to the Tuttles at that point, the parties would have gone through the cost of a trial pointlessly. In light of this fact, and inasmuch as this issue was not raised by the Tuttles on appeal, we have proceeded to reach the merits of the indemnity issue.

*Corp. v. Crossland Const. Co., Inc.*, 962 S.W.2d 906, 912 (Mo.App. S.D.1998). And, "we note that people are presumed not to intend nullities." *Jones v. Cox*, 629 S.W.2d 511, 513 (Mo.App. S.D.1981) (deed conveyance). To the contrary, the preferred construction is one that provides a "reasonable meaning to *each* phrase and clause," not one that "leaves some of the provisions without function or sense." *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 963 S.W.2d 392, 397 (Mo.App. W.D.1998).

To interpret the contract provisions as the trial court did conflicts with these principles, for it fails to give a reasonable meaning to each phrase, and instead leaves the Reservation Paragraph without meaning, and makes it a nullity in regard to the Tuttles' claims against the Muenks and as to their claims against Roadway based on vicarious liability. For, to adopt the trial court's reasoning, we would have to assume that, despite having, in the same document, specifically reserved all of their respective claims except their claims against the Muenks for Mr. Tuttle's injuries and Mrs. Tuttle's loss of consortium, and despite Mrs. Tuttle having received only $500 for this release (the value of her loss of consortium claim) the Tuttles then effectively contracted in the next paragraph to release all their other serious injury claims by promising to indemnify the Muenks as to such claims. That is, they would have agreed to hold the Muenks harmless for the same claims upon which they intended to and did reserve the right to sue them and Roadway.

Where two paragraphs in a contract conflict, as these do, the courts hold that the general language is subordinate to the specific language. *Allison v. Flexway*, 28 F.3d at 67. In *Allison v. Flexway*, which makes this point in a very analogous situation, the Allisons were injured by a truck driven by Mr. Stuck and owned by Flexway Trucking. Mr. Allison brought suit against Flexway and Mr. Stuck, and then settled his claims against them and signed a release. He then brought a separate suit for loss of consortium for his wife's injuries. Defendants claimed that the release Mr. Allison had previously signed covered both Mr. Allison's own personal injury claim and his loss of consortium claim for his wife's injuries. Mr. Allison said it was only intended to cover his own personal injury claim. As occurred here, the trial court found for the defendants and dismissed Mr. Allison's claim.

On appeal, the Eighth Circuit held that the trial court erred in finding the release unambiguous and excluding parol evidence as to the intent of the parties in signing the release. The release was entitled "RELEASE OF ALL CLAIMS" and provided in the first paragraph that Mr. Allison:

> hereby releases and forever discharges Flexway Trucking, Inc., Mark Stuck, . . . and all other persons, . . . of and from all claims, demands, damages, actions or causes of action, he may have whether on account of bodily injury damage, resulting or to result from an alleged accident which occurred on . . . at . . . in St. Louis, Missouri.

*Allison v. Flexway*, 28 F.3d at 66. Read alone, this provision appears to release all claims Mr. Allison might have arising out of the alleged accident, not just his own personal injury claims. However, the immediately succeeding paragraph stated:

> It is understood and agreed that this is a FULL AND FINAL RELEASE in full compromise settlement of all claims of every nature and kind, whatsoever, and releases all claims whether known or unknown, suspected or unsuspected, as set forth in the cause of action No. 91–1176C(7), entitled *Kenneth Allison v. Mark Stuck, and Flexway Trucking, Inc. ...*

*Id.* (bolding added). This paragraph appears to release only Mr. Allison's claims as set forth in his pending lawsuit, not other claims he might have which were not asserted therein, such as his claim for loss of consortium of his wife arising out of the

accident. Moreover, a letter sent with the release specifically stated "Mr. Allison expressly reserves his loss of consortium claim." *Id.* However, the court did not consider the letter since it found the release to be unambiguous in releasing all claims, not just Mr. Allison's claims for his own injuries. *Id.*

The Eighth Circuit reversed. It held that, while parol evidence cannot be used to determine the intent of the parties to an unambiguous contract, it can be used to determine their intent where the contract language is ambiguous, and that the question whether an ambiguity exists is a question of law. Relying on Missouri law, as set out in *Hawes v. O.K. Vacuum & Janitor Supply Co.*, 762 S.W.2d 865, 867 (Mo. App. E.D.1989), the court held:

> Another basic rule of construction is that when a release contains both general and specific language, the general language will be 'presumed to have been used in subordination to [the specific], and will be construed and limited accordingly.' ... If harmonization [of the language] is not possible, resolution of the ambiguity remains a question of fact for the jury.

*Allison v. Flexway*, 28 F.3d at 67 (citations omitted).

Also instructive is our analysis in *Allison v. National Ins. Underwriters*, 487 S.W.2d 257, 262–63 (Mo.App. W.D.1972), of the meaning of certain provisions of an insurance contract. After determining that an exclusion to the contract appeared to take away coverage specifically granted

elsewhere in the contract, the court concluded that there was an irreconcilable conflict in the contract, in that to give effect to the exclusion clause would render the coverage clause a nullity, and thus would disregard the intent of the parties to provide coverage. The court held that this conflict rendered the contract ambiguous. Since, in the case of insurance contracts, ambiguities are resolved in favor of the insured, it therefore concluded that the ambiguity must be resolved in favor of coverage.

We reached a similar result in *Universal Underwriters Ins. Co. v. Dean Johnson Ford, Inc.*, 905 S.W.2d 529, 534–35 (Mo. App. W.D.1995). In that case, similar to the *Allison v. National Ins. Underwriters* case, an exclusion appeared to take away the right to a defense which was specifically granted in the coverage section of the policy. The court resolved the conflict and ambiguity in the policy by holding that it must interpret the policy in a way which did not render any of its provisions a nullity. In that case, it was able to do that by requiring the insurer to provide a defense but not to provide coverage if the defense were not successful. *Id.*[6]

Here, of course, we do not interpret an insurance contract, but a release. Therefore, the principle that all ambiguities will be resolved against the insurer has no application. However, the principle that a contract will be found to be ambiguous where, as here, its terms are in conflict, is directly applicable.[7] We cannot

**6.** *Cf. State v. Dodd,* 961 S.W.2d 865, 868 (Mo. App. S.D.1998) (since Missouri courts presume that the legislature does not enact meaningless provisions, such an interpretation renders the provision a nullity); *Software A.G. of North America, Inc. v. City of Columbia,* 903 S.W.2d 641, 644 (Mo.App. W.D.1995) (court would not interpret one section of a statute in such a way that it would undermine the purpose for which the statute was enacted as that would render the section a nullity); *Swanger v. Nat'l Juvenile Law Center,* 714 S.W.2d 170, 172 (Mo.App. E.D.1986) (a corporation's bylaw in direct contradiction to a statute is a nullity, and thus cannot support a

breach of contract claim); *State ex rel. City of St. Louis v. Litz,* 653 S.W.2d 703, 707 (Mo. App. E.D.1983) (construction of a state constitutional provision that renders it invalid under the federal constitution renders that provision a nullity).

**7.** Respondents cite *Burlington Northern R.R. Co. v. Chicago & Northwestern Transp. Co.,* 851 S.W.2d 28 (Mo.App. W.D.1993), as supporting interpretation of the release in their favor. That case dealt with which of two separate contracts would govern, however, not with a conflict within the terms of a single contract. Its reasoning is not helpful here.

read the Indemnity Paragraph in isolation, but must read it in light of the Release and Reservation Paragraphs. Read as a whole, each release is patently ambiguous, for to give effect to the Indemnity Paragraph would render the Reservation Paragraph a nullity. Where it is not possible to harmonize general and specific language in a contract, ambiguity results. *Allison v. Flexway*, 28 F.3d at 67. Because we find that the Indemnity Paragraph cannot be clearly harmonized with the Release or Reservation Paragraphs, the former nullifies the latter, thus creating an ambiguity. Parol evidence and other evidence of the parties' intent should be considered on remand in order to resolve this ambiguity.

For these reasons, we find that the trial court erred in rendering judgment for Defendants based on the releases. We therefore reverse the trial court's grant of summary judgment and remand for further proceedings consistent with this opinion.

Judge PATRICIA BRECKENRIDGE concurs.