Donald K. ZEISER, Appellant/Cross–
Respondent,

v.

Amir H. TAJKARIMI and Three Rivers
Systems, Inc., Respondents/Cross
Appellants.

Nos. ED 85922, ED 85955.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 14, 2006.

Frank Susman, Kenneth B. Newman, Andrew D. Dillon, Lawrence C. Friedman, St. Louis, MO, for appellant.

Gregory H. Wolk, Andrew S. Berg, St. Charles, MO, for respondents.

LAWRENCE E. MOONEY, Judge.

This Court is presented with an appeal and cross-appeal from summary judgment entered in a contract dispute. Because the contract is ambiguous, summary judgment was improperly granted and, thus, we reverse and remand.

*Factual and Procedural Background*

This is an action between Three Rivers Systems, Inc., a software-development corporation, and its sole owner/shareholder, Mr. Amir H. Tajkarimi, on one hand, and on the other, Donald K. Zeiser, a former shareholder who remained engaged by the corporation as a consultant following the redemption of his company stock. Prior to August 2000, Mr. Tajkarimi and Mr. Zeiser were the sole owners/shareholders of Three Rivers.[1] In August of 2000, the parties agreed that Three Rivers would redeem all of Zeiser's corporate stock, and that Zeiser would resign as a director of Three Rivers. At the same time, the parties entered into a consulting agreement, whereby Three Rivers agreed to retain Zeiser as a consultant. It is this consulting agreement, and specifically the provisions for payment to Zeiser for his consulting services, that is at issue in the present action.

For his consulting services, Zeiser was to be paid according to the provisions set out in section 3 of the consulting agree-

---

1. Three Rivers, Mr. Tajkarimi, and Mr. Zeiser entered into a shareholders' agreement in December of 1991. Pursuant to that agreement, Mr. Tajkarimi owned 500 shares (59.95%) and Mr. Zeiser owned 334 (40.05%) of the outstanding common stock of the corporation.

ment.[2] This section had a number of subparagraphs that provided for a variety of payments, including subparagraph (a) that provided for an annual salary, and subparagraphs (b) and (c) that provided for quarterly payments equal to 20% of the net income of Three Rivers for the quarter. At the very heart of the debate in this case is subparagraph (d), which provides as follows:

> d) After the Stock Redemption Price has been paid in full under Section 2.1 of the Stock Redemption Agreement,[3] within 30 days of the end of the immediately preceding and each subsequent calendar quarter or other period as mutually agreed upon by the parties, a payment shall be made equal to an additional 30% of the Net Income (hereafter defined) of Three Rivers for the quarter or other agreed upon period just ended and for each quarter or other agreed upon period thereafter (less for the first quarter or other period only, the last payment under the Stock Redemption Agreement applied toward the Stock Redemption Price), until an aggregate sum of $1,400,000 has been paid to DKZ. Upon termination of this Agreement by either party, payments under this paragraph d) shall continue but at the increased percentage of 50% of Net Income.

Three Rivers and Mr. Tajkarimi (collectively the defendants) terminated the consultant agreement in September of 2003, and ceased making payments to Zeiser.[4]

2. Section 3 of the consulting agreement provided, in part, as follows:

> 3. *Payment.* For such consulting services, DKZ [Donald K. Zeiser] will be paid the following amounts:
>
> a) An annual salary of $40,000, payable in equal monthly installment on the first day of each month during the term of this Agreement, commencing September 1, 2000, ...
>
> b) Within 30 days of the end of the first calendar quarter after the date hereof, or of the end of such other period after the date hereof as mutually agreed upon by the parties, an initial payment shall be made equal to 20% of the Net Income (hereafter defined) of Three Rivers for the period from the date hereof until the end of said calendar quarter or other agreed upon period.
>
> c) Within 30 days of the end of each subsequent calendar quarter or other period as mutually agreed upon by the parties, a payment shall be made equal to 20% of the Net Income (hereafter defined) of Three Rivers for the quarter or other agreed upon period just ended.
>
> d) After the Stock Redemption Price has been paid in full under Section 2.1 of the Stock Redemption Agreement, within 30 days of the end of the immediately preceding and each subsequent calendar quarter or other period as mutually agreed upon by the parties, a payment shall be made equal to an additional 30% of the Net Income (hereafter defined) of Three Rivers for the quarter or other agreed upon period just ended and for each quarter or other agreed upon period thereafter (less for the first quarter or other period only, the last payment under the Stock Redemption Agreement applied toward the Stock Redemption Price), until an aggregate sum of $1,400,000 has been paid to DKZ. Upon termination of this Agreement by either party, payments under this paragraph d) shall continue but at the increased percentage of 50% of Net Income.
>
> e) After both the Stock Redemption Price and $1,400,000 are paid in full, within 30 days of the end of the immediately preceding and each subsequent calendar quarter or other period as mutually agreed upon by the parties, a payment shall be made equal to 20% of the Net Income (hereafter defined) of Three Rivers for the quarter or other agreed upon period just ended (less for the first quarter or other period only, the last payment under paragraph d) above applied toward the $1,400,000). Upon termination of this Agreement by either party, payments under this paragraph e) shall cease.

3. There is no dispute that Zeiser received the full amount of the stock redemption price.

4. The terms of the consulting agreement provided that either party could terminate the agreement upon 60 days' written notice.

The consulting agreement provided that, upon termination of the agreement, all payments under Section 3(a), (b), (c), and (e) would cease, but that Three Rivers would continue to have liability for payments under sections 3(d).

Zeiser filed suit against the defendants. In the first two counts of his six-count petition, Zeiser alleged breach of contract for the defendants' failure to pay the full amount of the $1,400,000 owed him under subparagraph 3(d) of the consulting agreement.[5] Zeiser claimed he was still owed approximately $677,000 under this section.

The defendants answered, and Three Rivers filed various counterclaims against Zeiser.[6] The defendants then moved for summary judgment on all counts of Zeiser's petition. As to Zeiser's breach-of-contract claims, the defendants contended that they had fulfilled their obligation to Zeiser, and thus were entitled to judgment as a matter of law, because the aggregate sum of all payments made to Zeiser under the consulting agreement had exceeded 1.4 million dollars, exclusive of the stock re-demption price, and because the defendants had terminated the consulting agreement before any further payments to Zeiser accrued. In the defendants' view, the phrase appearing in subparagraph 3(d)—"until an aggregate sum of $1,400,000 has been paid"—meant that all of the payments stipulated to be due for consulting services accumulated until the amount of 1.4 million dollars had been paid.

Zeiser also moved for partial summary judgment, seeking judgment in his favor on the issue of material breach of contract by the defendants, as alleged in the first two counts of his petition.[7] In Zeiser's view, "aggregate sum" meant only the aggregate of the payments made pursuant to subparagraph (d); payments made pursuant to the other subparagraphs of section 3 were not to be included in the 1.4 million-dollar payment. Zeiser argued that the consulting agreement provided for three distinct types of compensation. First, Zeiser contended he was to receive an annual salary under section 3(a). Sec-

5. In the other four counts of his petition, which are not directly at issue on appeal, Zeiser sought damages and/or rescission for alleged fraud in payments and fraudulent inducement. He also brought an action for accounting.

6. The defendants' counterclaims alleged (1) waste of corporate assets, (2) money had and received/embezzlement, and (3) breach of contract. The defendants also brought actions for accounting.

7. Zeiser also moved for partial summary judgment in his favor on all but one count of Three Rivers' counterclaim. No request was made for summary disposition of count II—money had and received/embezzlement of Three Rivers' counterclaim. The trial court, however, granted judgment in favor of Zeiser on all counts of Three Rivers' counterclaim. Three Rivers has filed a cross-appeal alleging trial-court error in granting judgment in Zeiser's favor on count II, because there was no motion pending before the court addressed to count II. Three Rivers' point is well taken. "In order for a trial court to grant summary judgment, it must normally have a motion for summary judgment before it...." *Williams v. Mercantile Bank of St. Louis NA*, 845 S.W.2d 78, 82 (Mo.App. E.D.1993). Here, there was no motion filed seeking summary judgment on count II. Thus, there was nothing before the court for decision relating to that count. The trial court, therefore, erred as a matter of law in entering summary judgment in favor of Zeiser on Count II. The judgment in favor of Zeiser on count II of Three Rivers' counterclaim is reversed and remanded for further proceedings. Three Rivers raises no further allegations of error regarding the trial court's judgment in Zeiser's favor on the other counts of its counterclaim. Accordingly, as to the other counts of Three Rivers' counterclaims, the trial court's judgment in favor of Zeiser is affirmed. And, Zeiser's motion to dismiss Three Rivers' cross-appeal is denied.

ond, Zeiser contended he was to receive quarterly payments equal to 20% of the net income of Three Rivers, as provided for in section 3(b) and (c) of the consulting agreement. And third, Zeiser contended he was also to receive 1.4 million dollars under section 3(d) of the consulting agreement. Zeiser admitted receiving the annual salary, as well as a total of $562,515 under the net-income provisions, sections 3(b) and (c), of the consulting agreement. Zeiser argued, however, that the defendants had materially breached the consulting agreement by only paying $735,485 of the 1.4 million dollars owed to him under section 3(d) of the agreement.

The trial court entered summary judgment for the defendants. In so doing, the court found that the phrase in section 3(d) of the consulting agreement, "until an aggregate sum of $1,400,000 has been paid," was unambiguous, and meant that all amounts paid pursuant to the preceding subparagraphs should be aggregated. The court found that there was no genuine issue that payment made in accordance with consulting agreement had accumulated to more than 1.4 million dollars, and thus the defendants had no additional liability for payment to Zeiser. Accordingly, the trial court found that the defendants were entitled to summary judgment on Zeiser's breach-of-contract claims. And, consequently, Zeiser's other claims failed because the defendants had performed their agreement. Zeiser appeals the grant of summary judgment on all counts, citing as error the trial court's misinterpretation of section 3(d) of the consulting agreement in its summary judgment on the breach-of-contract claims.

## Standard of Review

Our review of a grant of summary judgment is essentially *de novo*. *ITT Commercial Finance Corp. v. Mid–America* *Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We view the record in the light most favorable to the party against whom judgment was entered, and afford that party the benefit of all reasonable inferences. *Id.* For entry of summary judgment in its favor, a movant has the burden of proving that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. *Id.* at 381. Whether or not summary judgment was proper is a question of law, and we need not defer to the trial court's order granting summary judgment. *Id.* at 376.

## Discussion

■ The propriety of summary judgment in this case turns on the interpretation of the language of subparagraph 3(d) of the consulting agreement, and whether the language used is unambiguous in its meaning. "In a contract case, summary judgment is appropriate where the language of the agreement is so clear and unambiguous that the meaning of the portion of the contract in dispute is so apparent that it may be ascertained from the four corners of the document." *Board of Educ. City of St. Louis v. State*, 134 S.W.3d 689, 695 (Mo.App. E.D.2004) *citing Missouri Consol. Health Care Plan v. BlueCross BlueShield of Missouri*, 985 S.W.2d 903, 908 (Mo.App.1999)(*quoting MECO Sys., Inc. v. Dancing Bear Entertainment, Inc.*, 948 S.W.2d 185, 191 (Mo.App.1997)); *see also, Northwest Plaza, L.L.C. v. Michael–Glen, Inc.*, 102 S.W.3d 552, 557 (Mo.App. E.D.2003). "Summary judgment is inappropriate in an action arising out of a contract, however, where the disputed contract language is ambiguous and parol evidence is required to interpret the contract and the parties' intent." *Northwest Plaza*, 102 S.W.3d at 557 *citing Missouri Consol. Health Care Plan*, 985 S.W.2d at 908. Where a contract is ambiguous, then a question of fact arises as to

the intent of the parties as to its meaning, and thus it is error to grant summary judgment. *Tuttle v. Muenks,* 21 S.W.3d 6, 9 (Mo.App. W.D.2000). Rather, the determination of the parties' intent should be left to the jury. *Id.*

 Whether a contract is ambiguous is a question of law for the court, that we determine without deference to the trial court's decision. *Eveland v. Eveland,* 156 S.W.3d 366, 369 (Mo.App. E.D.2004); *see also, Northwest Plaza,* 102 S.W.3d at 557. A contract is not ambiguous merely because the parties disagree as to its construction. *Dunn Industrial Group, Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 428 (Mo. banc 2003). Rather, a contract is ambiguous only if its terms are susceptible of more than one meaning so that reasonable persons may fairly and honestly differ in their construction of the terms. *Id.; Northwest Plaza,* 102 S.W.3d at 557. Additionally, if language which appears plain considered alone conflicts with other language in the contract, or if giving effect to it would render other parts of the contract a nullity, then we will find the contract to be ambiguous. *Tuttle,* 21 S.W.3d at 9.

Despite all parties' contentions to the contrary, we hold the language of the consulting agreement to be ambiguous. The terms of the consulting agreement are susceptible of more than one meaning such that reasonable persons can fairly and honestly differ in their construction of the terms of the consulting agreement. The language of the agreement is simply unclear as to whether the aggregate sum of 1.4 million dollars refers only to the "additional" payments contemplated in 3(d) or whether it also refers to payments made under the other subparagraphs, as well. Additionally, in considering the contract as a whole, the language of subparagraph 3(d) appears to conflict with other provisions in the consulting agreement. Parol

evidence is required to interpret the contract and to ascertain the parties' intent in this case. For the foregoing reasons, we hold that the agreement is ambiguous.

Because the language of the consulting agreement is ambiguous and because parol evidence is required to determine the parties' intent, a genuine issue of material fact exists and, therefore, summary judgment is not proper. We, therefore, reverse the trial court's judgment granting summary judgment in the defendants' favor on all counts of Zeiser's petition, and remand the cause for further proceedings.

KATHIANNE KNAUP CRANE, P.J., and BOOKER T. SHAW, J., concur.