

# In the
# Missouri Court of Appeals
# Western District

MICHAEL CLARK, PERSONAL
REPRESENTATIVE FOR THE ESTATE
OF DORA M. WALL, DECEASED,

        Appellant,

v.

PATSY G. SMITH, PERSONAL
REPRESENTATIVE FOR THE ESTATE
OF CHARLES D. SMITH, DECEASED,

        Respondent.

WD84408

OPINION FILED:

MAY 3, 2022

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Mark A. Styles, Jr., Judge**

**Before Division Three: Gary D. Witt, Presiding Judge, Anthony Rex Gabbert, Judge,
W. Douglas Thomson, Judge**

Michael Clark ("Clark"), personal representative for the estate of Dora Clark-Wall ("Wall"), appeals the circuit court's Judgment which found that Wall failed to establish by competent evidence that she is entitled to receive payment from the estate of Charles D. Smith ("the Estate") for any personal loans. Clark contends on appeal that the circuit court, 1) erred by rendering its Judgment on July 8, 2020, without affording Wall an opportunity to present evidence in support of her claim in violation of Wall's right to due process under the Fourteenth Amendment to the United States Constitution, and 2) erred by rendering its judgment on July 8, 2020, without

providing Wall an opportunity to present evidence in support of her claim in violation of Wall's right to an open court under the Missouri Bill of Rights, Art. I, Sec. 14. We affirm.

## Procedural and Background Information

Charles D. Smith died intestate on April 9, 2018. On December 21, 2018, his widow, Patsy G. Smith, was appointed the personal representative of his estate ("the Estate"). On July 2, 2019, Wall filed a claim against the Estate pursuant to Section 473.360, RSMo 2016.[1] Wall alleged that the estate owed her $16,204.00 for a January 17, 1983, unpaid loan issued to Charles Smith to repair his vehicle. On July 11, 2019, the circuit court designated the probate proceeding as adversary. A bench trial was scheduled for November 26, 2019.

On November 25, 2019, the Estate filed a "Motion for Judgment Disallowing Petitioners Claim Against Estate." Therein, the Estate argued that if Wall's claim that she issued a loan of $16,204.00 to the decedent was founded on a written instrument, Wall failed to attach the written instrument to the claim as required by Section 473.380.2. The motion further alleged that Wall's claim was barred by the statute of limitations. Wall opposed the motion and moved to supplement her claims, attaching to her "Suggestions in Opposition" a handwritten note dated January 17, 1993. Presumably, the note was written by Wall and states that the decedent called from California and indicated that he needed to borrow $16,204.00 or "quit driving a truck and get another job." Wall wrote that the money was wired to the decedent in California. The note ends with, "Don will sign when he gets back to town," has a signature line with a star by it, and "Don Smith" below the signature line. There is no signature above the line.

---

[1] All statutory references are to the Revised Statutes of Missouri as updated through 2020, unless otherwise noted.

At the bench trial on November 26, 2019, the court first heard evidence regarding a claim filed against the Estate by Kansas City Chrome Shop, Inc. ("KCCS"). Wall was the president of KCCS and testified regarding unpaid loans allegedly made by KCCS to the decedent. At the outset of the testimony regarding that claim, the court stated: "[A]nd we're proceeding on the Kansas City Chrome Shop claim only." Early into Wall's testimony in the KCCS case, Wall referenced a $16,204.00 loan to the decedent from her personal bank account. The court interjected that it sounded like Wall was going into testimony about her personal loan, at which point Wall's attorney apologized and moved on with KCCS's evidence.

After the close of evidence on KCCS's claims, the court stated that it was transitioning "into the claim filed against the Estate on behalf of Ms. Dora Clark-Wall in Case No. 19P9-PR00796." Prior to the introduction of any evidence, the Estate indicated that the prior day it had filed its "Motion for Judgment Disallowing Petitioners Claim Against Estate." The Estate argued that the only loan identified in that claim was from 1983 or 1993 and barred by any potentially applicable statute of limitations. Wall indicated that she had filed Suggestions in Opposition to the Estate's motion that morning. Wall argued that there had been a "novation" or "new contract" with regard to the $16,204.00 loan, and "that new contract, in the context of this case and based on the evidence that's been presented today was in the context of the renewal of the life insurance policy." Wall's attorney explained:

> Back to the novation argument, as the Court has heard the testimony today. There was an agreement between Ms. Dora Clark-Wall and the decedent with respect [to] the renewal of the life insurance policies. That renewal had two parts to it. As a basis, one of those parts was to insure the decedent as a key man of the corporation.
>
> The other part of that was to guarantee renewal – to guarantee payment of the loans for which he had previously defaulted. That novation was part, not only of that insurance agreement, but Your Honor has heard testimony today with respect

3

to Claimants' Exhibit No. 4, there was a novation related to the decedent's signature on that document as well as that document. The decedent, according to the testimony, made promises that he would pay loans for which he has been in default.

So I think, Judge, my argument based on the evidence today is that there's evidence before this Court of two novations related to this that impact the statute of limitations argument[.]

The court then advised:

So the novation argument is a legal issue that testimony is going to be needed to prove that up. You've gone through the testimony that she would present would be – and I'm assuming that she's not going to have that, because we have dealt with it in the other issue, is supporting documentation of it. It's going to be her statements, what she's done, and steps she did in reliance of the decedent and why this loan is in place.

But the testimony, that is in the pleadings. So I can accept that as true. But I have got a motion to dismiss on a legal issue as to whether or not this claim has been filed timely. So that's the legal issue I need to take up before I hear any evidence.

And so the novation argument is a legal argument that I will consider. Because that's what these cases you cite state. So I can look that up and rule on the motion, on the pleadings with your response.

The court granted Wall's request to supplement her Suggestions in Opposition. Wall stated: "So, Your Honor, do you wish me to present evidence on that claim or do we need to –" The court responded: "-- we'll wait and take that up."

On February 20, 2020, Wall filed a brief titled "Claimant's Brief Regarding Authority of Dora Clark-Wall to File Claims Individually and on Behalf of Kansas City Chrome Shop, Inc." With regard to Wall's claim related to this appeal, she argued that the evidence "demonstrates that a contract existed between Dora Clark-Wall individually and Charles Smith." Wall stated that "[t]his evidence was presented by Mr. Mike Clark and Ms. Dora Clark-Wall through their testimony and the exhibits received by this Court at the November 26, 2019 hearing." Wall contended that she and the decedent "entered into a novation contract in 2010 for the loans of

4

decedent outstanding prior to that date." She alleged that the "novation contract was based on an extension of a life insurance held by Claimant Kansas City Chrome Shop, Inc. on decedent's life" as shown in Exhibit #5.[2] She argued that the written execution of the life insurance agreement "in part constituted a contractual novation wherein decedent agreed that the insurance on his life would be a new contract to provide for payment for his past debt."

The life insurance policy, filed with Wall's Suggestions in Opposition and also entered into evidence in the KCCS case, was first purchased in April 1989 for $100,000 coverage, and increased to $225,000 coverage one year later. The policy was for a term of twenty years, and the premiums for the policy were to be automatically drawn from KCCS's checking account. Notices regarding the policy were to be sent to the policy owner. The decedent was named as the "Primary Insured" within the policy. KCCS was named as the "Owner," with "Dora M. Clark – KC Chrome Shop, Inc." signed on the "Owner" signature line. The primary beneficiary was named as "Kansas City Chrome Shop Inc.," and no contingent beneficiary was named. The primary beneficiary's "Relationship to Insured" was described as "Business Employee Key Man." Wall testified at the hearing on KCCS's claim that the policy was initially established as a "Key Man" insurance policy which would allow KCCS to continue if Charles Smith died, as Smith had contacts Wall did not have, had drivers that Wall did not have, and KCCS needed Smith in the business "in order for it to be viable." The policy was renewed in August 2010 when the twenty-year term expired.

On page 5 of the 2010 renewal, there is an "Additional Comments/Special Requests" section. Therein it is hand written: "Please refund the difference from my August premium and

---

[2] Exhibit #5, which is a transcript excerpt from Wall's testimony in the KCCS case, references life insurance and other alleged loans but does not reference the alleged $16,204.00 loan.

apply to September payment" and "Charles Donald Smith." Nothing within the 2010 renewal states that the decedent's signature on the "Application Agreement and Authorization Section" is a promise to repay a $16,204.00 loan allegedly given to him from Wall's personal funds seventeen years prior, or any other alleged loan.

On July 8, 2020, the court entered Judgment denying Wall's claim. The court found that "a statement shall not be received as evidence of the claim, but such claim shall be established by competent evidence before it is paid or adjusted. RSMo. §473.380.3." Further, that "Claimant failed to establish by competent evidence she is entitled to receive payment from Decedent's estate for any personal loans." On August 7, 2020, Wall moved to amend the Judgment, arguing that Wall had not been given an opportunity to present evidence regarding the claim. On November 9, 2020, the court denied the motion.

This appeal follows.

### Standard of Review

"A court-tried probate case is reviewed under the standard of *Murphy v. Carron*, 536 S.W.2d 30 (Mo banc 1976)." *In re Estate of Schooler*, 204 S.W.3d 338, 342 (Mo. App. 2006). "Under that standard, the probate court judgment will be sustained 'unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.'" *Id.* (quoting *Murphy*, 536 S.W.2d at 32). We review questions of law *de novo*. *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012).

**Point I – Due Process**

In his first point on appeal, Clark[3] contends that the circuit court erred by rendering its Judgment on July 8, 2020, without affording Wall an opportunity to present evidence in support of her claim. Clark argues that, while the court stayed the proceedings so that the parties could brief different legal issues before determining whether another trial date would be necessary, the court issued a judgment that did not address any of the legal issues raised by the parties, but instead made a factual determination that Wall failed to present competent evidence. Clark argues that this deprived Wall of her opportunity to be heard, and her due process rights under the Fourteenth Amendment to the United States Constitution were thereby violated.

As discussed above, when the parties appeared for trial on November 26, 2019, the court first addressed the Estate's pending "Motion for Judgment Disallowing Petitioners Claim Against Estate," wherein the Estate argued that Wall's claim was barred by the statute of limitations, and that if Wall's alleged loan of $16,204.00 was founded on a written instrument, Wall failed to attach the written instrument to the claim as required by Section 473.380.2. Wall filed Suggestions in Opposition to the Estate's motion just prior to trial and argued that there was a "novation" or "new contract" with respect to this particular loan (and several loans in the KCCS case), with the novation "in the context of this case and based on the evidence that's been presented today was in the context of the renewal of the life insurance policy." Wall contended that the renewal consisted of two parts -- one was to insure the decedent as a key man of KCCS, and the other was to guarantee payment of the loans for which the decedent had previously defaulted. The court granted Wall an

---

[3] Wall passed away on November 11, 2020. This court granted Wall's counsel's request to substitute the "Estate of Dora M. Wall, by Michael Clark, Personal Representative," as the appellant in this matter. Michael Clark is Wall's son, and was also an officer of KCCS who testified in the KCCS case.

opportunity to supplement her suggestions in opposition to the Estate's motion, and Wall did so. Therein, Wall argued that the 2010 renewal of the life insurance policy was a new, written promise by the decedent to pay his prior debt. Wall advised that evidence of this new "contract" had been presented by Clark and Wall through their testimony at the November 26, 2019 hearing in the KCCS case, as well as the exhibits received by the court at that time. Wall filed a copy of the insurance policy and renewal with her Suggestions in Opposition.

We find no error in the court's denial of Wall's claim.[4] Section 473.380.2 requires that any claim founded on a written instrument include the original or a copy of that written instrument. Wall supplemented her filings with a handwritten note dated January 17, 1993, which states that $16,204.00 was wired to the decedent upon his request. The note ends with "Don will sign when he gets back to town," has a signature line with a star by it, and "Don Smith" below the signature line. There is no signature above the line. This note, therefore, does not evidence that the decedent ever acknowledged this alleged loan. Regardless, Wall contended that there was a 2010 novation in the form of a life insurance renewal which extinguished this contract and created a new promise by the decedent to pay Wall $16,204.00.

> Under Missouri law, a novation is the substitution of a new contract or obligation for an old one that is thereby extinguished. The four elements necessary for finding a novation are: (1) a previous valid obligation; (2) agreement of all parties to a new contract; (3) extinguishment of an old contract; and (4) validity of a new contract. In addition to these requirements, there must be evidence that the parties intended to enter into a novation. The burden of proof is on the party asserting the novation.

---

[4] We will affirm the circuit court's judgment "if it is correct on any ground supported by the record, regardless of whether the trial court relied on that ground." *Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 22 (Mo. banc 2003). We are primarily concerned with the correctness of the result, not the route taken by the trial court to reach it. *Id.*

*State ex rel. Premier Marketing, Inc. v. Kramer*, 2 S.W.3d 118, 122 (Mo. App. 1999) (internal citations omitted).  "A novation is subject to the same rules as any other contract and, as such, it must be sufficiently definite to allow the court to determine its exact meaning and to definitely measure the extent of the promisor's liability." *Id.* at 122-123.

We find that, even if the January 17, 1993, handwritten note could be considered proof of a previous valid obligation of the decedent, nothing within the insurance policy renewal even remotely suggests that it is a novation for this alleged loan.  Nothing within the policy renewal shows, 1) that the decedent owed an obligation to Wall, 2) that Wall and the decedent were contracting in any manner between themselves by signing the life insurance documents, 3) that the January 17, 1993, alleged loan was being extinguished by renewal of the insurance policy, or 4) that there was any new contract that obligated the decedent to pay $16,204.00.  As the circuit court noted, Section 473.380.3 requires that competent evidence must establish a claim.  Wall advised the court that proof of the novation centered around two things -- the life insurance renewal policy and Wall's testimony with regard to the intent of that renewal.  In the KCCS case, Wall made an identical novation argument – i.e., that the 2010 life insurance renewal represented a novation for various loans KCCS allegedly made to the decedent.  The circuit court heard this evidence, and KCCS rested after presenting all of its evidence.  Wall advised the court that this evidence from the KCCS case supported her novation claim regarding the $16,204.00 loan.  Wall never claimed to have additional proof that she intended to supply with regard to the alleged $16, 204.00 loan.[5]

---

[5] Wall/Clark never argued in briefing to the circuit court that additional evidence was available to prove the existence of a contract, and never argued in the Motion to Amend the Judgment that additional evidence was available to prove the existence of a contract.  While Clark now claims that Wall was not given the opportunity to present evidence regarding her claim, Clark makes no attempt to explain on appeal what additional evidence is available to prove the existence of a contract.

Regardless, parole evidence cannot be used to alter the written instrument that is the foundation of her claim.

"The parole evidence rule prohibits use of oral evidence to contradict or change the terms of a written, unambiguous and complete contract absent fraud, common mistake, accident or erroneous omission." *Harms v. Harms*, 496 S.W.3d 534, 540 n.9 (Mo. App. 2016) (internal quotation marks and citation omitted). "The rule prohibits evidence of contrary agreements made prior to or contemporaneously with the writing … [and] it is presumed that a written contract embodies the entire agreement of the parties[.]" *Id.* "Whether a contract is ambiguous is a question of law for the court[.]" *Zeiser v. Tajkarimi*, 184 S.W.3d 128, 133 (Mo. App. 2006). "[A] contract is ambiguous only if its terms are susceptible of more than one meaning so that reasonable persons may fairly and honestly differ in their construction of the terms." *Id.* "[I]f language which appears plain considered alone conflicts with other language in the contract, or if giving effect to it would render other parts of the contract a nullity, then we will find the contract to be ambiguous." *Id.*

Here, the life insurance policy renewal is not ambiguous with regard to whether the decedent agreed to repay Wall a loan of $16,204.00; it says nothing about the decedent promising to repay any prior loans. And, Wall never claimed that the insurance documents were ambiguous. Instead, she erroneously believed that her oral testimony could add nonexistent provisions to the "contract," including provisions completely irreconcilable with the plain language of the renewal. Notably, Wall contended that the intent of the policy renewal was to repay Wall *personally* for the alleged $16,204.00 loan. Yet, the plain language of the renewal provides that KCCS, and not Wall, is the sole beneficiary of the policy proceeds. To accept Wall's testimony in this regard would create an ambiguity where none exists.

Point I is denied.

10

**Point II – Missouri Bill of Rights**

In Clark's second point on appeal, he contends that the circuit court erred by rendering its Judgment on July 8, 2020, without providing Wall an opportunity to present evidence in support of her claim in violation of Wall's right to an open court under the Missouri Bill of Rights, Art. I, Sec. 14.

This claim is unpreserved. "[T]o preserve constitutional questions for review on appeal, the constitutional issue must be raised in the trial court at the earliest opportunity, consistent with good pleading and orderly procedure." *Carpenter v. Countrywide Home Loans, Inc.*, 250 S.W.3d 697, 701 (Mo. banc 2008). "This rule is necessary to prevent surprise to the opposing party and to allow the trial court the opportunity to identify and rule on the issue." *Id.* Rule 78.07(b) states that, in cases tried without a jury, "neither a motion for new trial nor a motion to amend the judgment or opinion is necessary to preserve any matter for appellate review *if the matter was previously presented to the trial court*." (Emphasis added). Clark's first opportunity to raise this claim was in the "Motion to Amend Judgment." Although the due process claim regarding the United States Constitution was raised in that motion, the court's alleged violation of Wall's right to an open court under Missouri's Bill of Rights was not. It has, therefore, been waived.

Point II is denied.

**Conclusion**

The circuit court's Judgment is affirmed.

_____
Anthony Rex Gabbert, Judge

All concur.

11