**STATE ex rel. PREMIER MARKETING, INC., and Frank Petsick, Relators,**

v.

**The Honorable C. William KRAMER, Respondent.**

**No. WD 56310.**

Missouri Court of Appeals, Western District.

Aug. 3, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 5, 1999.

Thomas E. Barzee, Jr., N. Kansas City, for relator.

John B. Boyd, Independence, for respondent.

HANNA, Judge.

On January 20, 1998, Schwindler Brokerage Company of Kansas City, filed a pleading entitled "Petition on Account Stated" in the circuit court of Jackson County.[1] The petition named relators, Premier Marketing, Inc., a Nebraska corporation, and Frank Petsick, a Nebraska resident and president of Premier,[2] who was a guarantor, as defendants. The underlying dispute concerns a default under a "Consultation and Advisory Agreement" and promissory note, both dated May 1, 1989.[3] The documents, including the guar-

---

1. Schwindler Brokerage Company of Kansas City was a Missouri corporation that was administratively dissolved for failure to file an annual report on August 12, 1994.

2. Mel Brammeier was also named as a party defendant. Mr. Brammeier is deceased and was never served with process in this case.

3. Schwindler Brokerage Company, Inc., not Schwindler Brokerage Company of Kansas , City, was a party to these agreements. It was

anties, were executed in Omaha, Nebraska. The underlying lawsuit sought judgment against relators under the promissory note, Consultation and Advisory Agreement, and accompanying guaranties. Premier and Petsick subsequently filed a motion to dismiss challenging the subject matter jurisdiction of the Missouri courts based on the forum selection clause in the consultation agreement.[4] The Honorable C. William Kramer denied the motion and the relators filed their petition for a writ of prohibition with this court, and we issued our writ.

Relators contend that Missouri courts do not have either subject matter jurisdiction or personal jurisdiction over Premier. Schwindler argues that it entered into a novation with Premier in February 1994, thereby extinguishing the terms of the promissory note and consultation agreement, including the forum selection clause. We hold that the forum selection clause in the parties' consultation agreement is valid. Therefore, the trial court lacks subject matter jurisdiction, and the preliminary writ is made permanent.

Premier is a Nebraska corporation with its principal place of business in Omaha, Nebraska. It is not registered to do business in Missouri. On or about May 1, 1989, Premier and Schwindler Brokerage Company, Inc., executed a promissory note and entered into a "Consultation and Advisory Agreement." Both the note and the consultation agreement included guaranties executed by Frank Petstick, president of Premier, and Mel Brammeier.

Schwindler Brokerage Company, Inc., agreed to provide advice and counsel to Premier for a term of five years in exchange for a monthly fee of $2850. The agreement contains a forum selection clause stating that: "[t]his agreement shall be governed in all instances by the laws of the State of Nebraska, and any action on this agreement shall be brought only in the Courts of Nebraska." The consultation agreement stated that it was not assignable and that all amendments must be in writing. The promissory note was signed May 1, 1989, by Petsick as president of Premier and called for payment of $60,000, payable in installments of $1000 a month. Part of the record on appeal consists of a document, unsigned by either party, dated February 7, 1994. Schwindler's petition identifies the document as a "statement of account" calling for payments of $2000 per month commencing March 20, 1994. On February 26, 1996, and again on March 15, 1996, Schwindler sent letters to Premier demanding that they make payment of "all monies owed plus interest."

◼◼◼ The power to issue a writ of prohibition is limited to correction or limitation of an inferior court or agency that is acting without, or in excess of, their jurisdiction. *State ex rel. J.E. Dunn Const. Co. v. Fairness in Const. Bd. Of City of K.C.*, 960 S.W.2d 507, 511 (Mo.App.1997). A writ of prohibition does not issue as a matter of right, and whether a writ should be issued in a particular case is a question left to the sound discretion of the court to which the application has been made. *Id.* The discretionary authority of the court to issue a writ of prohibition, however, is exercised when the facts and circumstances of a particular case demonstrate unequivocally that there exists an extreme necessity for preventative action. *Derfelt v. Yocom*, 692 S.W.2d 300, 301 (Mo. banc 1985). A writ of prohibition is an extraordinary remedy and it should be used with "great caution, forbearance, and only in cases of extreme necessity." *Missouri Dept. of Soc. Serv. v. Admin. Hearing Comm'n*, 826 S.W.2d 871, 873 (Mo.App.

a Missouri corporation that was administratively dissolved on May 21, 1984.

**4.** The motion to dismiss was supported by an affidavit with extensive factual recitation by

Mr. Petsick challenging personal and subject matter jurisdiction. The affidavit was unchallenged.

1992). However, when it is clear that the pleadings fail to invoke the court's jurisdiction, prohibition is appropriate. *State ex rel. Rival Co. v. Gant,* 945 S.W.2d 475, 476 (Mo.App.1997).

■ The Supreme Court has identified three situations in which writs of prohibition will issue. *State ex rel. Chassaing v. Mummert,* 887 S.W.2d 573, 577 (Mo. banc 1994). The writ of prohibition will issue to prevent an usurpation of judicial power because the trial court lacks either personal or subject matter jurisdiction; to remedy a clear excess of jurisdiction or an abuse of discretion such that the lower court lacks the power to act as contemplated and; finally, in limited situations where some absolute irreparable harm may come to a litigant if some spirit of justifiable relief is not made available to respond to a trial court's order. *Id.* at 577.

■ A writ of prohibition is the appropriate vehicle in which to raise issues regarding jurisdiction. *State ex rel. McDonnell Douglas Corp. v. Ryan,* 745 S.W.2d 152, 153 (Mo.1988)(discussing subject matter jurisdiction); *State ex rel. William Ranni Assoc., Inc. v. Hartenbach,* 742 S.W.2d 134, 136 (Mo. banc 1987)(discussing personal jurisdiction); *State ex rel. Phelan v. Davis,* 965 S.W.2d 886, 888 (Mo.App.1998)(addressing subject matter and personal jurisdiction).

■ Relators contend here that the forum selection clause in the consultation agreement divested the Missouri court of subject matter jurisdiction. Relators also argue that the Missouri courts lack personal jurisdiction over Premier because Schwindler failed to demonstrate: (1) that this suit arose out of an activity enumerated in the long-arm statute; (2) that Premier had sufficient minimum contacts with Missouri; and (3) that Schwindler had standing to bring this suit. Because the dispositive issue is the court's subject mat-

ter jurisdiction, we do not reach the personal jurisdiction issue.

■ Historically, courts did not favor out-bound forum selection clauses; however, the recent trend is to recognize the validity of such clauses unless they can be proven to be unfair or unreasonable. *See M/S Bremen GmBH v. Zapata Off–Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Missouri courts have now declared valid, fair and reasonable those forum selection clauses that provide for trials outside of Missouri. *High Life Sales Co. v. Brown–Forman Corp.,* 823 S.W.2d 493, 496 (Mo. banc 1992). In *High Life Sales,* the Missouri Supreme Court held that fair and reasonable out-bound forum selection clauses are *prima facie* enforceable. *Id.* at 497. In examining this issue, the Court concluded that Missouri should treat out-bound forum selection clauses as enforceable unless they are unfair or unreasonable. *Id.*[5] In determining the fairness question, courts evaluate whether the clause is adhesive, whether it is neutral and reciprocal in nature, and whether its enforcement would be reasonable. *Id.*

The consultation agreement here was for advice and counsel regarding client retention, customer relations, new clients, and other business conditions. Both parties were operating in the business world and there is no charge that one party had greater bargaining power than the other did. Moreover, Schwindler has not challenged the reasonableness or fairness of the forum selection clause.

Schwindler claims that in February 1994, it sent Premier a payment schedule calling for the "liquidation of the balances due on the note and consultation agreement by payments of $2,000.00 per month commencing March 20, 1994." Schwindler argues that this schedule constitutes a novation that rejects the forum selection

---

**5.** See also Restatement (Second) of Conflicts of Laws § 80 (1971), stating that the parties' agreement as to the place of the action should be given effect unless it is unfair or unreasonable.

clause. Its primary argument on appeal is that this February 1994 payment schedule replaced the prior agreement, thereby extinguishing the forum selection clause.

██ Under Missouri law, a novation is the substitution of a new contract or obligation for an old one that is thereby extinguished. *Moley v. Plaza Properties, Inc.*, 549 S.W.2d 633, 635 (Mo.App.1977). The four elements necessary for finding a novation are: (1) a previous valid obligation; (2) agreement of all parties to a new contract; (3) extinguishment of an old contract; and (4) validity of a new contract. *Ponze v. Guirl*, 794 S.W.2d 699, 702 (Mo.App.1990). In addition to these requirements, there must be evidence that the parties intended to enter into a novation. *Spencer v. Millstone Marina, Inc.*, 890 S.W.2d 673, 676 (Mo.App.1994). The burden of proof is on the party asserting the novation. *Id.*

Relators claim that Schwindler should be precluded from arguing that a novation took place because it did not plead a novation in its Petition on Account Stated. Furthermore, Premier points out that the alleged novation was not signed and that Premier's name is not found on the document.[6]

Schwindler's petition refers to the February 1994 document as a "statement of the account." In fact, the petition makes direct reference to the consultation agreement and promissory note and, in doing so, it pleads facts inconsistent with a novation. For example, the petition makes reference to Schwindler's demand, dated February 26, 1996, declaring "the unpaid principal under the Promissory Note and the Con-

sultation and Advisory Agreement immediately due and payable."[7] This demand on the note and consultation agreement occurred two years after the alleged novation, thereby factually repudiating a novation.

Additionally, Schwindler argues on appeal that the novation forgave its right to recover "from [Premier] its costs and expenses of collection including court costs and reasonable attorney's fees" as consideration between the parties. However, the petition prays for "reasonable attorney fees" and costs, which is a further factor indicating that Schwindler, as the pleader, did not intend to plead a novation.

Finally, Schwindler alleges in its petition that it is entitled to a "judgment against Premier under a certain promissory note, Consultation and Advisory Agreement, and accompanying guaranties." The petition factually seeks recovery under the promissory note and consultation agreement, not a novation of those agreements. The petition does not contain factual allegations that satisfy the pleading requirements of a novation. *See DeLaporte v. Robey Bldg. Supply, Inc.*, 812 S.W.2d 526, 536 (Mo.App.1991)(quoting *Ohlendorf v. Feinstein*, 636 S.W.2d 687, 690 (Mo.App.1982))(ruling that "[i]n Missouri no claim of error may be considered by an appellate court in a civil appeal unless it was presented to and decided by the trial court").

Moreover, Schwindler can not be successful when the merits of its claim are considered. A novation is subject to the same rules as any other contract and, as such, it must be sufficiently definite to

---

**6.** In Missouri, the Statute of Frauds provides that: "no action shall be brought to charge ... any person upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized." § 432.010, RSMo 1994.

**7.** On February 26, 1996, Schwindler sent a letter to Premier stating: "Premier Marketing has not made a payment in over 11 months. Per the agreement all dollars owed Schwindler Brokerage Company including interest charges are now due 30 days from the date of this letter. If the total amount is not paid by 3/27/96 legal proceedings on the company and the personal guarantees will begin."

allow the court to determine its exact meaning and to definitely measure the extent of the promisor's liability. *Ponze*, 794 S.W.2d at 702. Schwindler acknowledges that the alleged novation of the consultation agreement was not signed by either party, and that it did not make reference to Premier. Schwindler explains the absence of a signature on the February 9, 1994, document by stating that "subsequent to the novation, payment was received ... allowing the reasonable conclusion that the terms of the old contract were now extinguished." Although no direct reference is made to a specified payment, the inference is that the payments were two checks, each for $1000 (which have been made a part of the record on appeal) dated 2–24–95 and 3–15–95, payable to Schwindler.

There is nothing before this court, other than Schwindler's argument, suggesting that the two checks were paid pursuant to the February document. The alleged novation is an unsigned document informing Premier that Schwindler intended to liquidate the balances due on the note and consultation agreement. However, each check was for $1000. The alleged novation called for a payment of $2000 each month. Actually, the $1000 amount is the exact amount of the payments due under the promissory note. Moreover, the first payment under the alleged novation would have been due in March 1994, not February and March of 1995, which are the dates that the checks were issued. Obviously, there is no basis for Schwindler's argument that the two checks were payments pursuant to the alleged novation and, thus, a critical element of the alleged novation is missing. There are no pleaded facts or attached documents suggesting a novation of the terms of the consultation agreement and the promissory note. We hold on these facts that there was no novation and, therefore, the forum selection clause is enforceable.

Schwindler raises two additional points, however, no precedential value would be served by a published opinion on either point. Thus, we affirm the trial court's decision in accordance with Rule 84.16(b). A memorandum opinion has been furnished to the parties explaining the basis for our decision with regard to those two points.

The respondent judge erred in overruling defendant's motion and is without subject matter jurisdiction. Thus, the preliminary order of prohibition is made absolute.

HOWARD, P.J., and ELLIS, J., concur.

