**CHANNAWOOD HOLDINGS, LLC and 1201 Washington (St. Louis), LLC, Plaintiffs/Appellants,**

v.

**1209 WASHINGTON, LLC, Bogen Building Managing Member, LLC, Bogen Building Landlord, LLC, Bogen Building Master Tenant, LLC and St. Louis Title, LLC, Defendants/Respondents.**

No. ED 94498.

Missouri Court of Appeals, Eastern District, Division Three.

Nov. 2, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 21, 2010.

---

Terry L. Pabst, St. Louis, MO, for Plaintiffs/Appellants.

John Challis, Elizabeth J. Halaz, St. Louis, MO, for Defendants/Respondents, 1209 Washington, LLC, Bogen Building Managing Member, LLC, Bogen Building Landlord, LLC, and Bogen Building Master Tenant, LLC.

Sara E. Finan, St. Louis, MO, for Defendant/Respondent, St. Louis Title, LLC.

SHERRI B. SULLIVAN, P.J.

### Introduction

On October 8, 2009, the trial court entered a Memorandum, Order and Partial Judgment granting summary judgment in favor of 1209 Washington, LLC (1209 Washington), Bogen Building Managing Member, LLC (Bogen Managing Member), Bogen Building Landlord, LLC (Bogen Landlord) and Bogen Building Master Tenant, LLC (Bogen Master Tenant) (collectively Respondents) and against Channawood Holdings, LLC (Channawood) and 1201 Washington St. Louis, LLC (1201 Washington) (collectively Appellants) on Counts I, II, III, IV, VI, VII and VIII of Appellants' First Amended Petition, and denying summary judgment on Count V. On January 27, 2010, the trial court entered a Judgment disposing of Count V,

the only remaining count in the case, based on the parties' agreement that Appellants dismiss Count V with prejudice. This appeal follows.

*Factual and Procedural Background*

At the time pertinent to the underlying litigation, 1209 Washington was the owner of some condominium units (property) located on the ground floor of the Bogen Building on Washington Avenue in the City of St. Louis.[1] Channawood was interested in acquiring this property, and so on July 5, 2007, Channawood, as Purchaser, and 1209 Washington, as Seller, entered into the Commercial Condominium Purchase and Sale Agreement (the Agreement or Contract). Pursuant to the Agreement, 1209 Washington agreed to sell the property to Channawood for $1,252,900, such purchase price to be adjusted based upon the results of a new property survey.

The Agreement provides that the "Closing Date shall be ON OR BEFORE September 15, 2007, but no sooner than July 12, 2007, at the sole discretion of the Seller, who agrees to give the Purchaser not less than 7 days prior written notice from Seller to Purchaser." The Agreement also contemplates a leaseback of a portion of the property from Channawood to Jacob Development Group, LLC (JDG), the owner of 1209 Washington. Pursuant to this proposed leaseback, Channawood agreed to lease the current space occupied by the Sales Center within the property to JDG. Section 17 of the Agreement contains a stipulation providing that if the balance of the terms and conditions of this lease were not fully negotiated by July 10, 2007, the Agreement became null and void:

> [Channawood] agrees to lease the current space occupied by the Sales Center within the Commercial Unit(s) described herein to [JDG] and/or its successors and assigns. The parties have agreed in

concept to a 2 year gross lease with the only cost to tenant being a rent in the amount of $10.00 per square foot annual rent and the tenant having to pay the monthly electric. Tenant will pay for condo dues. Parties have also agreed that tenant shall have a one year option to extend said lease at a market rate as determined by an appraiser. **In the event that the parties cannot agree to the balance of terms and conditions of said lease on or before July 10, 2007, this Agreement shall become null and void unless this date is mutually extended in writing by the parties.**

[Emphasis added.]

After the execution of the Agreement, Channawood engaged Riley Waldrop, LLC (RW) to act as a broker to locate prospective retail tenants for the property. RW located a prospective tenant for a portion of the property to use the space as a wine bar. On October 3, 2007, Channawood's counsel discussed the Agreement with 1209 Washington's counsel, offering to prepare a proposed amendment to the Agreement to confirm that while the September 15, 2007 closing date had passed, the parties had continued and would continue to work in good faith to close on the sale, and to extend the deadlines that had passed. On October 4, Channawood's counsel forwarded the Agreement Amendment to counsel for 1209 Washington.

On October 22, 2007, 1209 Washington provided Channawood with written notice of a proposed closing schedule, suggesting October 30, 2007. Channawood responded that it would need 48 hours to review the revised condominium documents to determine if they were acceptable and, if so, would schedule the closing. On October 25, 2007, Channawood forwarded to 1209 Washington a proposed First Amendment to Declaration of Condominium for The

---

1. Bogen Landlord currently has title to the property.

Bogen, a Condominium (Proposed Amendment to Declaration).

On November 7, 2007, 1209 Washington's counsel e-mailed counsel for Channawood that 1209 Washington was taking the position that the Agreement had terminated on July 10, 2007 pursuant to paragraph 17 and requested that Channawood provide an acknowledgement that the parties were still under contract. On November 13, Channawood responded that "purchaser [Channawood] is happy to execute an amendment acknowledging that the parties are under contract. . . ." On November 29, 2007, Channawood forwarded a draft of the lease contemplated under paragraph 17 to 1209 Washington. On December 17, 2007, Channawood e-mailed 1209 Washington inquiring as to comments on the draft lease and the status of the Agreement Amendment. On January 3, 2008, Channawood sent a letter to 1209 Washington reaffirming that "both parties have been working in good faith toward closing the [Proposed Acquisition]" and proposing a new closing date of January 21, 2008. On January 9, 2008, Channawood sent another letter to 1209 Washington unequivocally and unconditionally reaffirming that Channawood was "ready, willing and able to close on January 21, 2008." On January 24, 2008, Channawood sent a written notice of default[2] to 1209 Washington. 1209 Washington did not respond, and the time to cure 1209 Washington's failure and refusal passed.

On April 24, 2009 Appellants filed their First Amended Petition against Respondents, alleging in Count I, breach of contract (Specific Performance); Count II, breach of contract (Damages); Count III, breach of duty of good faith and fair dealing; Count IV, *prima facie* tort; Count VI, unjust enrichment; Count VII, money had and received; and Count VIII, constructive trust. Respondents filed a motion for summary judgment on these counts, which the trial court granted on October 8, 2009, based on a finding that the Agreement became null and void according to its terms on July 10, 2007. This appeal follows.

### Points on Appeal

In their first point, Appellants maintain the trial court erred in granting summary judgment in favor of Respondents on Appellants' contract claims, because the trial court erroneously declared and applied Missouri law on the waiver of contingencies, in that the agreement did not automatically terminate on July 10, 2007, by reason of the failure of the JDG leaseback contingency as 1209 Washington waived the contingency by its course of conduct.

In their second point, Appellants contend the trial court erred in rendering summary judgment in favor of Respondents on Appellants' contract claims, because the trial court erroneously declared and applied Missouri law on estoppel, in that 1209 Washington should be estopped from asserting the agreement automatically terminated on July 10, 2007, by reason of 1209 Washington's actions which caused Appellants to reasonably believe that the agreement remained in full force and effect.

### Standard of Review

Our review of a grant of summary judgment is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We view the record in the light most favorable to the party against whom judgment was entered, and afford

---

**2.** The Agreement provides that in the event that the proposed acquisition does not close due to a default by 1209 Washington, Channawood is entitled to seek specific performance of the Agreement.

that party the benefit of all reasonable inferences. *Id.* For entry of summary judgment in its favor, a movant has the burden of proving that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. *Id.* at 381. Whether or not summary judgment was proper is a question of law, and we need not defer to the trial court's order granting summary judgment. *Id.* at 376.

### Discussion

### Waiver

■ As set forth in the facts, Paragraph 17 of the Agreement provides, "In the event that the parties cannot agree to the balance of terms and conditions of said lease on or before July 10, 2007, this Agreement shall become null and void unless this date is mutually extended in writing by the parties." Such a provision in a contract is a condition subsequent, that is, one which by its express terms provides for an *ipso facto* cancellation on the happening or non-occurrence of a stipulated event or condition. 17A C.J.S. Contracts § 339; Restatement of the Law of Contracts, § 250; *Berger v. McBride & Son Builders, Inc.,* 447 S.W.2d 18, 19 (Mo.App. 1969). A condition is defined as "an event, not certain to occur, which must occur unless its non-occurrence is excused before performance under a contract is due." *Howard v. Youngman,* 81 S.W.3d 101, 110 (Mo.App. E.D.2002); Restatement (Second) of the Law of Contracts § 224.

The Agreement clearly and unambiguously provides that unless Channawood and 1209 Washington agree to the balance of terms and conditions of the lease on or before July 10, 2007, the Agreement becomes null and void. Channawood and 1209 Washington did not agree to the balance of the terms and conditions of the lease on or before July 10, 2007. Therefore, by its own terms, the Agreement is null and void.

Appellants maintain that even if the parties did not meet the lease condition of the Agreement, the Agreement is still in effect because Respondents waived the lease condition.

■ "In Missouri, it is well-settled law that a party to a real estate contract may waive any condition in that party's favor." *Pelligreen v. Wood,* 111 S.W.3d 446, 450 (Mo.App. E.D.2003). That waiver may be implied from conduct. *Spencer Reed Group, Inc. v. Pickett,* 163 S.W.3d 570, 574 (Mo.App. W.D.2005). "However, to rise to the level of a waiver, the conduct must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of the conduct is possible." *Id.* "[T]here must be a clear, unequivocal, and decisive act of a party showing such purpose, and so consistent with intention to waive that no other reasonable explanation is possible." *Crabby's Inc. v. Hamilton,* 244 S.W.3d 209, 214 (Mo.App. S.D.2008); *Bartleman v. Humphrey,* 441 S.W.2d 335, 343 (Mo.1969).

■ The parties agree that the lease condition was for the benefit of at least both parties, and perhaps also JDG as a third party. Therefore, both Channawood and 1209 Washington would have had to waive the condition by July 10, 2007, in order for the Contract not to have become null and void pursuant to the non-occurrence of the lease condition by or on July 10, 2007. See, e.g., *Howard,* 81 S.W.3d at 111–12 (July 24 deadline constitutes time limit on financing contingency; if buyer wishes to accept different terms or waive condition of a loan commitment, buyer is required to give written notice of acceptance of different terms or waiver by July 24 deadline, and failure to do so terminates contract).

■ The only evidence Appellants set forth to establish waiver prior to the Contract becoming null and void by its own terms is the fact that neither 1209 Washington nor JDG contacted Channawood to discuss any purported additional terms or conditions of the proposed Lease. This inaction does not rise to the level of conduct so manifestly consistent with and indicative of an intention to renounce the lease condition that no other reasonable explanation of the conduct is possible. See *Spencer Reed Group, Inc.*, 163 S.W.3d at 574. Paying no heed to or overlooking a deadline mandating action does not constitute a clear, unequivocal, and decisive act of a party showing intent to waive such deadline. *Crabby's Inc.*, 244 S.W.3d at 214.

Appellants maintain that they thought they had done everything required to satisfy the condition, *i.e.*, agree to the balance of the terms and conditions of the Lease on or before July 10, 2007. However, Appellants did not submit a draft lease until November 29, 2007, months after the July 10, 2007 deadline. The draft lease contained many provisions in addition to the rent, space and utilities terms set forth in Paragraph 17. Therefore, this evidence demonstrates that the parties did not agree to the balance of the terms and conditions of the lease by July 10, 2007, and the parties were still negotiating the terms.

Appellants maintain that a party's actions *after* a contract terminates due to the non-occurrence of a condition can demonstrate waiver.

When the July 10, 2007 deadline passed without the parties agreeing to the balance of the terms and conditions of the lease agreement, the parties could either amend the Contract or renegotiate a new contract.

In *Crabby's, Inc.*, 244 S.W.3d at 215, the parties signed an amendment to the contract after the automatic termination, which the Court accepted as a waiver of a condition that had by its terms, failed, and thus caused the contract to automatically terminate. The Court reasoned thusly:

The contract in the instant case defines its Effective Date as "the date and time of final acceptance on the signature page." Seller finally accepted the contract by signing the signature page on May 17, 2003. Thus, the effective date of the contract was May 17, 2003. The financing contingency in paragraph five of the contract provided: "if Buyer does not furnish Seller with a copy of an effective written loan commitment within 30 days from the Effective Date, then this Contract shall automatically terminate and the Earnest Money shall be returned to Buyer." This thirty-day time period expired on June 16, 2003. The evidence is undisputed that Buyers did not furnish Seller with a copy of an effective written loan commitment within this time period. Therefore, by its explicit terms, the contract "automatically terminated" on June 16, 2003. See *L & K Realty Co. v. R.W. Farmer Constr. Co.*, 633 S.W.2d 274, 277–78 (Mo.App. 1982). Yet, Buyers' actions after that date were inconsistent with such a termination.

*Id.* at 214. With regard to the buyers' actions after the date of termination, the *Crabby's, Inc.* court stated:

On July 17, 2003, a month after the contract supposedly automatically terminated, Buyers executed *a written amendment to the contract extending the closing date from July 14, 2003 to August 1, 2003.* This amendment additionally provided for the assignment of the contract to Paragon as a buyer in addition to Hamilton and for a $1,373.54 credit against the purchase price in exchange for Buyers releasing

Seller from any obligation to perform any further repairs to the property. Finally this amendment provided: "IT IS UNDERSTOOD BY ALL PARTIES THAT ALL OTHER TERMS AND CONDITIONS OF THE CONTRACT REMAIN UNCHANGED." Buyers entered into this amendment with the intention of closing the contract on August 1, 2003.

*Id.* at 214–15.

In the instant case, there was no such explicit amendment. On November 7, 2007, 1209 Washington told Channawood that the Agreement had terminated on July 10, 2007, pursuant to Section 17 and that Channawood should provide an acknowledgement that the parties were still under contract. Channawood did so by sending 1209 Washington a proposed Agreement Amendment, which 1209 Washington never acknowledged or accepted. Accordingly, the evidence in the record indicates that the parties *contemplated* signing an amendment to the contract, but did not do so. Therefore, *Crabby's, Inc.* does not support Appellants' argument.

> [W]here a clause in a contract is interpreted as making it void or automatically cancelled upon the happening of a certain contingency, an attempted waiver after the occurrence of the condition can be supported, if at all, only as the re-creation of a contract, for, the old contract having ceased to exist, only a new contract can reinstate the respective rights and duties.

Williston on Contracts 3rd § 667. Under *Berger*, actions after the Contract became null and void by its own terms are relevant only to show the re-creation of a contract, which did not occur here, because there is no evidence in the record of a renegotiated contract. Although Channawood kept attempting to renegotiate the terms of the Agreement with 1209 Washington after the deadline had passed, these attempts at renegotiation were not returned in kind by 1209 Washington, as evidenced by the parties' actions, or lack thereof, from November of 2008 through January of 2009 as set forth in the factual background, to-wit: On November 13, Channawood told 1209 Washington that it would execute an amendment acknowledging that the parties were under contract. On November 29, 2007, Channawood forwarded a draft of the lease contemplated under paragraph 17 to 1209 Washington, adding several additional terms. On December 17, 2007, Channawood e-mailed 1209 Washington inquiring as to comments on the draft lease and the status of the Agreement Amendment. On January 3, 2008, Channawood sent a letter to 1209 Washington reaffirming that "both parties have been working in good faith toward closing the [Proposed Acquisition]" and proposing a new closing date of January 21, 2008. On January 9, 2008, Channawood sent another letter to 1209 Washington unequivocally and unconditionally reaffirming that Channawood was "ready, willing and able to close on January 21, 2008." On January 24, 2008, Channawood sent a written notice of default to 1209 Washington. 1209 Washington did not respond to any of these renegotiations, or rather attempts to renegotiate or recreate, the terms of the now-expired Agreement, and therefore there was no recreated or renegotiated contract.

For the foregoing reasons, Point I is denied.

### Estoppel

Unlike waiver, estoppel involves the imposition of liability on the basis of acts which usually were not intended to produce the consequences sought. *Rooks v. Lincoln County Farmers Fire & Lightning Mut. Ins. Co.*, 830 S.W.2d 507, 511 (Mo.App. E.D.1992). "Estoppel requires (1) an admission, statement, or act inconsistent with the claim afterwards asserted

and sued upon, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement, or act." *Id.*

Estoppel is an unfavored theory in the law. *Shores v. Express Lending Services, Inc.*, 998 S.W.2d 122, 127 (Mo. App. E.D.1999). The party who asserts equitable estoppel must establish each element by clear and satisfactory evidence and we restrict the application of the doctrine to cases in which each element clearly appears. *Id.* Estoppel will not " 'arise unless justice to the rights of others demands it.' " *Id.* quoting *Peerless Supply Co. v. Industrial Plumbing & Heating Co.*, 460 S.W.2d 651, 666 (Mo.1970).

In the instant case, the parties knew they were no longer under a valid and enforceable contract after July 10, 2007. One cannot set up another's act or conduct as the ground of an estoppel when he knew or had the same means of knowledge as the other to the truth. *Farmland Industries, Inc. v. Bittner*, 920 S.W.2d 581, 583 (Mo.App. W.D.1996). "[I]f both parties know the facts or have equal means of ascertaining them there can be no estoppel." *Rhoads v. Rhoads*, 342 Mo. 934, 119 S.W.2d 247, 252 (1938).

After the Contract by its terms became null and void, Channawood and 1209 Washington continued to negotiate and renegotiate the potential terms of a sale of the property, but were unable to come to an agreement. 1209 Washington did not make any statement or take any action during the pendency of the parties' Agreement or thereafter that was inconsistent with the fact that the Agreement expired on July 10, 2007, upon which Channawood relied to its detriment. In fact, 1209 Washington specifically asserted the fact of the Contract's July 10 expiration on November 7, 2007, a fact which Channa-

wood conceded. Channawood's concession of the Contract's expiration and suggestion of an amended agreement to fix that problem belies its argument on appeal that it was lulled or misled into believing to its detriment that 1209 Washington considered the contract not to have expired. "To work an equitable estoppel, the person claiming the benefit of the estoppel must have been misled into such action that he will suffer injury if the estoppel is not declared." *Emery v. Brown Shoe Co.*, 287 S.W.2d 761, 766 (Mo.1956). Equitable estoppel precludes a seller from engaging in conduct which lulls a buyer into a sense of security regarding the continued existence of a contract. *Bogad v. Wachter*, 365 Mo. 426, 283 S.W.2d 609, 613–14 (1955). In the instant case, 1209 Washington's conduct was to the contrary, in that 1209 Washington expressly declared to Channawood the Contract's expiration and its resulting nullity. Accordingly, 1209 Washington did not lull Channawood into falsely believing that the Contract had not in fact expired by its own terms.

Channawood has failed to carry its burden of proving all of the elements of estoppel by clear and satisfactory evidence. *Shores*, 998 S.W.2d at 127. Based on the foregoing, Point II is denied.

*Conclusion*

The judgment of the trial court is affirmed.

CLIFFORD H. AHRENS and LAWRENCE E. MOONEY, JJ., concur.