# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-3196

_____

The Estate of Charles D. Smith, by Patsy G. Smith, Personal Representative

*Plaintiff - Appellee*

v.

Primerica Life Insurance Company

*Defendant*

Kansas City Chrome Shop, Inc.; The Estate of Dora Mae Wall, Substituted for Dora Clark-Wall

*Third Party Defendants - Appellants*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 22, 2022
Filed: November 23, 2022

_____

Before GRUENDER, SHEPHERD, and ERICKSON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

This case concerns a $225,000 life insurance policy issued on the life of Charles Smith. When Smith died in 2018, his estate ("Smith's Estate" or the

"Estate") made a claim for the policy proceeds. His former employer, Kansas City Chrome Shop ("KCCS"), together with KCCS's president, Dora Clark-Wall, made a competing claim. After the district court[1] granted partial summary judgment in favor of Smith's Estate, Clark-Wall brought equitable claims in her personal capacity.[2] Following a bench trial, the district court found that Clark-Wall was entitled to an equitable portion of the proceeds totaling $55,253.28 and that Smith's Estate was entitled to the remaining $169,746.72. KCCS and Clark-Wall appeal, and we affirm.

## I.

In 1989, Primerica issued a twenty-year $100,000 life insurance policy on Charles Smith's life. KCCS, a Kansas corporation for whom Smith worked, was the owner and named beneficiary of the policy. According to Smith's family, Smith stopped working for KCCS around 1994. In 2010, without Smith's assent, the policy was renewed for another twenty-year term and its benefit was increased to $225,000. All premiums under the policy were paid by Clark-Wall. The policy provided that "[p]roceeds will be paid to [Smith's] estate if there is no living beneficiary or owner" at the time of Smith's death.

Following Smith's death in 2018, his Estate asked Primerica for the policy proceeds. KCCS and Clark-Wall made competing claims. When Primerica declined to pay the proceeds to any claimant, Smith's Estate sued Primerica for breach of contract in Missouri state court.

In April 2019, after removing the Estate's suit on diversity grounds, Primerica brought an interpleader action against the Estate and against KCCS and Clark-Wall.

---

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

[2]Clark-Wall died in November 2020, and her estate has been substituted as a party. For convenience, we refer simply to Clark-Wall.

*See* 28 U.S.C. § 1335; Fed. R. Civ. P. 22. KCCS and Clark-Wall then filed a breach-of-contract claim against the Estate, alleging that Smith and Clark-Wall had previously agreed that the policy was to be "an assurance and collateral" held by KCCS for a series of unpaid loans made to Smith and that the Estate breached that agreement when it submitted a claim for the proceeds to Primerica. Later, Primerica deposited the proceeds into an interest-bearing account held by the district court and was dismissed as a party.

Meanwhile, separate proceedings took place in Missouri state court. In July 2019, KCCS and Clark-Wall each filed probate claims against Smith's Estate, alleging that they made personal loans to Smith that remained outstanding when he died. In July 2020, after a bench trial, the court entered judgment in favor of Smith's Estate on both claims. As to KCCS's claim, applying Kansas law, the court found that KCCS was dissolved as a corporation in 1994 and therefore lacked standing to pursue any probate claim against Smith's Estate. As to Clark-Wall's claim, the court found that Clark-Wall "failed to establish by competent evidence she is entitled to receive payment . . . for any personal loans." KCCS and Clark-Wall appealed, and the Missouri Court of Appeals later affirmed. *Kan. City Chrome Shop, Inc. v. Smith*, 649 S.W.3d 19, 20 (Mo. Ct. App. 2022); *Clark v. Smith*, 644 S.W.3d 835, 837 (Mo. Ct. App. 2022).

In August 2020, the federal district court granted partial summary judgment to Smith's Estate. The court found that, in light of the state court's determination that KCCS was dissolved as a corporation in 1994, KCCS was collaterally estopped from asserting that it was a "living beneficiary" under the policy at the time of Smith's death. Having thus dismissed KCCS from the case, the court then allowed Clark-Wall to proceed in her personal capacity with claims for breach of contract, novation, unjust enrichment, and recoupment, as well as affirmative defenses of equitable estoppel and waiver.

Following a bench trial, the district court denied Clark-Wall's breach-of-contract, novation, and recoupment claims but granted her unjust-enrichment claim.

It did not address her affirmative defenses. Accordingly, the court ordered that Clark-Wall was entitled to an equitable award of $55,253.28 to be paid from the proceeds, representing the total amount of her premium payments. The remaining proceeds went to Smith's Estate. Clark-Wall moved to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), requesting that the court specify the amount of interest to be added to her equitable award. The court denied that motion and explained that the only interest to which she was entitled was "any interest accrued on this amount from the date Primerica deposited the funds into the Court registry."

On appeal, KCCS and Clark-Wall challenge the district court's application of collateral estoppel, its denial of Clark-Wall's claims for breach of contract and novation, and its failure to address her affirmative defenses. Clark-Wall also challenges the district court's decision not to include prejudgment interest with her equitable award and its denial of her Rule 59(e) motion.

## II.

We begin with KCCS and Clark-Wall's argument that the district court erred in finding that KCCS was collaterally estopped from asserting that it was a "living beneficiary" under the policy at the time of Smith's death. "We review a district court's collateral-estoppel determination de novo." *Riis v. Shaver*, 4 F.4th 701, 703 (8th Cir. 2021).

Collateral estoppel, sometimes called issue preclusion, generally bars the relitigation of factual or legal issues that were decided—correctly or not—in a prior action. *Ginters v. Frazier*, 614 F.3d 822, 825-26 (8th Cir. 2010); *Fischer v. Scarborough*, 171 F.3d 638, 641 (8th Cir. 1999). Its purpose is to "protect[] against the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and . . . minimiz[e] the possibility of inconsistent decisions." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 147 (2015) (internal quotation marks omitted).

Here, to determine whether collateral estoppel applies, we look to the law of Missouri, the state that issued the potentially preclusive judgment. *See Riis*, 4 F.4th at 703. Under Missouri law, four conditions must be met for collateral estoppel to apply: (1) the issue for which collateral estoppel is asserted in the present action is identical to one that was determined in the prior action, (2) the prior action resulted in a judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior action, and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity in the prior action to litigate the issue for which collateral estoppel is asserted. *In re Caranchini*, 956 S.W.2d 910, 912-13 (Mo. 1997).

KCCS and Clark-Wall assert that the first condition is not met because the issues involved in the state and federal actions were different. They argue that the state court considered only whether KCCS had standing to pursue a probate claim for reimbursement of personal loans against Smith's Estate, whereas the federal court considered the distinct question of whether KCCS could collect the policy proceeds. They do not dispute that the other collateral-estoppel conditions are satisfied.[3]

We conclude that the district court properly applied collateral estoppel because the issue presented in the federal action was already determined in the prior state action: whether KCCS was a valid, existing corporation at the time of Smith's death.

---

[3]KCCS and Clark-Wall argued in their briefs that the fourth collateral-estoppel condition was not met because the state judgment was pending appeal and thus not "final." After briefs were filed, however, the Missouri Court of Appeals affirmed the state judgment. *Kan. City Chrome Shop*, 649 S.W.3d at 29. Accordingly, at oral argument, counsel for KCCS and Clark-Wall conceded the state judgment's finality. *See Noble v. Shawnee Gun Shop, Inc.*, 316 S.W.3d 364, 369 (Mo. App. Ct. 2010).

In the state action, the court had to resolve, as a threshold matter, whether KCCS had standing to sue. *See CACH, LLC v. Askew*, 358 S.W.3d 58, 61 (Mo. 2012). Because dissolved corporations generally lack authority to sue, *Gunter v. Bono*, 914 S.W.2d 437, 440 (Mo. Ct. App. 1996), the standing question led the court to consider KCCS's corporate status. Applying Kansas law, the court found that KCCS forfeited its articles of incorporation in 1991 and had until 1994 to settle its affairs, at which point it dissolved. *See* 7 Kan. Stat. Ann. § 17-6807.

In the federal action, the district court had to determine whether KCCS was a "living beneficiary" at the time of Smith's death in 2018 such that it was entitled to the Primerica policy proceeds. Whether a corporation is a "living beneficiary" under a life insurance policy depends on that corporation's corporate status—if the corporation is dissolved, it is not "living." *See Chicago Title & Tr. Co. v. 4136 Wilcox Bldg. Corp.*, 302 U.S. 120, 124-25 (1937) ("[A] private corporation in this country can exist only under the express law of the state or sovereignty by which it was created. Its dissolution puts an end to its existence, the result of which may be likened to the death of a natural person."); *Manard v. Snyder Bros. Co.*, 964 S.W.2d 487, 488 n.3 (Mo. Ct. App. 1998) (observing that a forfeited corporation "cease[s] to exist as a legal entity"). The federal action therefore presented the same issue of KCCS's corporate status that the state court already adjudicated. Accordingly, the district court properly held that the state court's determination that KCCS had dissolved in 1994 barred KCCS from asserting that it was a "living beneficiary" in 2018.[4]

---

[4]KCCS and Clark-Wall argue that the state judgment was not preclusive as to whether KCCS was "living" at the time of Smith's death because the state court's conclusion that KCCS was dissolved rested on an error of law. They maintain that the court erred because KCCS was reinstated in 2020 under Kansas law, demonstrating that KCCS "has never been dissolved as a corporation." *See* 7 Kan. Stat. Ann. § 17-7002(e) (providing that a corporation may be "reinstated with the same force and effect as if its articles of incorporation or authority to engage in business had not been forfeited"). But the state court considered this argument and nonetheless determined that KCCS was dissolved. *See Kan. City Chrome Shop*, 649

-6-

Contrary to KCCS and Clark-Wall's argument, the state court did not need to decide specifically whether KCCS was entitled to the policy proceeds for its corporate-status determination to have preclusive effect in the federal action. Even when two suits raise different legal issues or causes of action, a fact properly determined in one will be given effect in the other. *Spath v. Norris*, 281 S.W.3d 346, 352 (Mo. Ct. App. 2009). Because the state court "necessarily and unambiguously resolve[d] the same question presented in the [federal] proceeding," *see U-Haul Co. v. Carter*, 567 S.W.3d 680, 685 (Mo. Ct. App. 2019) (internal quotation marks omitted), the district court did not err in finding that KCCS was collaterally estopped from asserting that it was a "living beneficiary" entitled to the policy proceeds.

## III.

We next address whether the district court erred in denying Clark-Wall's claims for breach of contract and novation. After a bench trial, we review legal conclusions *de novo* and factual findings for clear error. *Kaplan v. Mayo Clinic*, 847 F.3d 988, 991 (8th Cir. 2017).

### A.

We begin with the breach-of-contract claim. Under Missouri law, a breach-of-contract action requires the claimant to demonstrate "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Mo. Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. 2010). Although the construction of a contract's terms is a question of law, *Rowan v. Coves N. Homes Ass'n*, 426 S.W.3d 725, 727 (Mo. Ct. App. 2014), whether a contract exists is a question of fact, *Laws v. Progressive Direct Ins.*, 615 S.W.3d 861, 867 (Mo. Ct. App. 2020).

---

S.W.3d at 22. And even if the state court's determination was legally erroneous, it would still have preclusive effect in the federal action. *See Ginters*, 614 F.3d at 826.

Clark-Wall alleges that Smith accepted several personal loans from her and agreed that, if she purchased the Primerica policy and paid the premiums, the proceeds would serve as collateral in the event that he could not repay her. When Smith's Estate submitted a claim for the proceeds to Primerica, Clark-Wall argues, it breached this agreement.

The only evidence of any such agreement is Clark-Wall's testimony that Smith was considered KCCS's "key man," that he "asked me to buy an insurance policy so that if something would happen to him, I could regain part of the money" for the loans, and that he encouraged her to continue making premium payments. The policy itself does not refer to any obligation by Smith concerning loan repayment. Nor does it say that a claim for the proceeds by Smith's Estate would be a breach of its terms. Indeed, it expressly provided that Smith's Estate would be entitled to the proceeds if there was no living beneficiary.

The district court found that neither Clark-Wall's testimony nor any other evidence demonstrated the existence of any agreement that Smith's Estate might have breached when it asked Primerica for the policy proceeds. After reviewing the record, we find no clear error in that determination. *See Viacom Outdoor, Inc. v. Tauoil*, 254 S.W.3d 234, 239 (Mo. Ct. App. 2008) (affirming dismissal of breach-of-contract claim where "[t]he record reveal[ed] not even a modicum of evidence showing a meeting of the minds"). Accordingly, the district court did not err in denying Clark-Wall's breach-of-contract claim.

B.

Clark-Wall's related novation claim fares no better. Novation is "the substitution of a new contract or obligation for an old one which is thereby extinguished." *State ex rel. Premier Mktg., Inc. v. Kramer*, 2 S.W.3d 118, 122 (Mo. Ct. App. 1999). It consists of "(1) a previous valid obligation; (2) agreement of all parties to a new contract; (3) extinguishment of an old contract; and (4) validity of a new contract." *Id.* Novation is sometimes asserted as a theory underlying a breach-

of-contract claim or as an affirmative defense to such a claim. *See, e.g.*, *Am. Nat. Ins. v. Noble Commc'ns Co.*, 936 S.W.2d 124, 131 (Mo. Ct. App. 1996); *Wilson v. Midstate Indus.*, 777 S.W.2d 310, 312 (Mo. Ct. App. 1989); *McHenry v. Claspill*, 545 S.W.2d 690, 692 (Mo. Ct. App. 1976).

Clark-Wall alleges that the 2010 policy renewal was a novation of a prior agreement between Smith and her that the policy proceeds would serve as collateral for Smith's outstanding debts. She says that when it became clear that Smith could not repay his debts, Smith and she agreed to renew the policy so that she could be compensated. We construe Clark-Wall's novation argument as a breach-of-contract claim with respect to the 2010 policy renewal.

As explained above, there is no clear error in the district court's determination that no agreement existed between Smith and Clark-Wall concerning the use of the policy proceeds to repay loans. Without establishing that Smith owed her a previous obligation—let alone that he agreed to substitute that obligation by renewing the policy in 2010—Clark-Wall could not show that the policy renewal was a novation. *See Premier Mktg.*, 2 S.W.3d at 122. Therefore, the district court did not err in rejecting Clark-Wall's novation claim.

**IV.**

We turn now to Clark-Wall's argument that the district court erred by not addressing her affirmative defenses of equitable estoppel and waiver at the bench trial. We review the district court's implicit denial of these defenses for an abuse of discretion. *See Riegelsberger v. Air Evac EMS, Inc.*, 970 F.3d 1061, 1063 (8th Cir. 2020).

The defense of equitable estoppel has three elements: (1) "an admission, statement, or act by the person to be estopped that is inconsistent with a later claim"; (2) an action by the person asserting estoppel that is taken in reliance on such "admission, statement or act"; and (3) an injury that would result if the person to be

estopped "is permitted to contradict or repudiate his admission, statement or act." *Shores v. Express Lending Servs., Inc.*, 998 S.W.2d 122, 127 (Mo. Ct. App. 1999). It is an "unfavored theory in the law." *Channawood Holdings, LLC v. 1209 Wash., LLC*, 333 S.W.3d 480, 488 (Mo. Ct. App. 2010). The related equitable defense of waiver may be pleaded against a party who attempts to assert a right after engaging in conduct that is "so manifestly consistent with and indicative of an intention to renounce" such right. *Id*. at 485.

Clark-Wall asserts that Smith's Estate is equitably estopped from recovering the policy proceeds because Smith never cancelled the policy, paid the premiums himself, or instructed her to stop paying them. Such inaction, she argues, demonstrated that Smith intended for her, not his Estate, to receive the proceeds and induced her to continue making payments on the belief that the proceeds would be hers. Alternatively, Clark-Wall argues that Smith's inaction constituted a waiver of his Estate's right to recover the proceeds.

Neither equitable estoppel nor waiver is plausible. The district court did not find that Smith even knew about the policy or Clark-Wall's continued premium payments. Indeed, it expressly found that Clark-Wall renewed the policy without Smith's assent. We find no clear error. Obviously, if Smith did not know that Clark-Wall was making payments or that the policy even existed, his supposed inaction would be neither inconsistent with, nor a waiver of, his Estate's claim to the proceeds. *See Ryan v. Ford*, 16 S.W.3d 644, 651 (Mo. Ct. App. 2000) ("[T]o invoke [equitable estoppel] . . . a party must show by clear evidence that there was: a representation made by the party estopped . . . [which] may be manifested by affirmative conduct, either acts or words, or by silence amounting to concealment of material facts. These facts must be known to the party estopped, and unknown to the other party." (citations and internal quotation marks omitted)); *cf. Channawood Holdings*, 333 S.W.2d at 486 (holding that waiver did not occur where a party "pa[id] no heed to or overlook[ed] a deadline mandating action"). Accordingly, the district court did not abuse its discretion in implicitly denying Clark-Wall's equitable-estoppel and waiver defenses.

-10-

**V.**

Finally, we consider Clark-Wall's argument that the district court should have ordered prejudgment interest on her unjust-enrichment award. We review a district court's ruling on prejudgment interest for an abuse of discretion.[5] *Vogt v. State Farm Life Ins.*, 19 F.4th 1071, 1073 (8th Cir. 2021).

Prejudgment interest may be awarded as "compensation for the use or loss of the use of money to the person entitled to it." *Lambley v. Diehl*, 603 S.W.3d 346, 364 (Mo. Ct. App. 2020). In interpleader actions, "prejudgment interest need not be automatically allowed," *Ins. Co. of N.A. v. Skyway Aviation, Inc.*, 828 S.W.2d 888, 892 (Mo. Ct. App. 1992), and will be awarded only if the "principles of fairness and justice" so require, *Catron v. Columbia Mut. Ins.*, 723 S.W.2d 5, 7 (Mo. 1987); *see also Bauer v. Uniroyal Tire Co.*, 630 F.2d 1287, 1290 (8th Cir. 1980) ("Even if [state] law allows an award of prejudgment interest, a court will make an award in an interpleader action only if it is equitable to do so.").

Although the district court equitably awarded $55,253.28 to Clark-Wall, Clark-Wall says this amount is inadequate because it compensates her merely for the premiums' "face value" and not their "time value." By the same token, Clark-Wall argues that it would be "inequitable and unjust" for Smith's Estate to retain the policy proceeds "without paying offset for interest." The district court disagreed, finding that an award of $55,253.28 without prejudgment interest was adequate compensation.

---

[5]Although Clark-Wall frames them as separate issues on appeal, we consider together the district court's initial decision not to order prejudgment interest with her unjust-enrichment award and its later denial of her Rule 59(e) motion asking to alter or amend the award to include prejudgment interest. *See Cont'l Indem. Co. v. IPFS of N.Y., LLC*, 7 F.4th 713, 717 (8th Cir. 2021) (reviewing for an abuse of discretion a court's ruling on a Rule 59(e) motion requesting prejudgment interest).

We are unpersuaded that the district court abused its discretion by not including prejudgment interest with Clark-Wall's equitable award. At the bench trial, Smith's widow and daughter both testified that Smith stopped working for KCCS sometime around 1994—by which point the corporation was dissolved—and that, by 1999, Smith no longer owed any debts to KCCS or Clark-Wall. Clark-Wall nonetheless continued to make monthly premium payments on the Primerica policy for the next nineteen years, even renewing it without Smith's assent. Nothing in the record suggests that Clark-Wall ever attempted to cancel the policy, turn it over to Smith, or inform Primerica that Smith stopped working for KCCS or that KCCS was dissolved.

Given these circumstances, it seems that Clark-Wall's continued payments and renewal of the policy were essentially a gamble on Smith's life—a benefit she hoped to reap if he died before she did. The law does not view such conduct favorably. *See Lakin v. Postal Life & Cas. Ins.*, 316 S.W.2d 542, 549 (Mo. 1958) ("A person cannot take out a valid and enforceable policy of insurance for his own benefit on the life of a person in which he has no insurable interest; such a policy or contract of insurance is void and unenforceable on the grounds of public policy, it being merely a wagering contract."). We therefore fail to see how the principles of fairness and justice demand that Clark-Wall be awarded accumulated interest on her payments. *See Purcell v. Cape Girardeau Cnty. Comm'n*, 322 S.W.3d 522, 524 (Mo. 2010) (observing that litigants with "unclean hands" generally may not obtain equitable relief). Accordingly, we find no abuse of discretion in the district court's equitable award to Clark-Wall.[6]

---

[6]Clark-Wall further urges that the district court should have used her equitable-recoupment claim as another means of awarding prejudgment interest. Equitable recoupment permits a defendant to "claim damages from a plaintiff, either because [the plaintiff] has not complied with some cross obligation of the contract upon which he sues, or because [the plaintiff] has violated some duty which the law imposed upon him in the making or performance of that contract." *Russell v. Empire Storage & Ice Co.*, 59 S.W.2d 1061, 1067 (Mo. 1933). The district court did not abuse its discretion in rejecting this claim on the basis that the claim addressed the same concerns as Clark-Wall's unjust-enrichment claim. *See Coohey v. United*

-12-

## VI.

For the foregoing reasons, we affirm.

_____

*States*, 172 F.3d 1060, 1064 (8th Cir. 1999) (observing that equitable recoupment "finds its roots in the equitable concerns of unjust enrichment").