Lillie SHORES, Plaintiff/Appellant,

v.

EXPRESS LENDING SERVICES, INC., a Missouri Corporation, Jean Kavanaugh, Christopher Kavanaugh, Defendants/Third–Party Plaintiffs/Respondents,

and

Associates Home Equity Services, Inc. formerly doing business as Ford Consumer Finance Company, Inc., Defendants,

v.

Marlo Wright, Third–Party Defendant.

No. ED 75015.

Missouri Court of Appeals, Eastern District, Division Three.

June 29, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 29, 1999.

Application for Transfer Denied Sept. 21, 1999.

**124** ■ ■ ■ ■ ■ ■ ■

Steven K. Brown, St. Louis, for appellant.

Clifford Schwartz, Schwartz & Ochs, P.C., St. Louis, for respondents.

KATHIANNE KNAUP CRANE, Judge.

Plaintiff filed a petition to collect damages against defendants[1] arising out of their actions in arranging a mortgage and deed of trust on the equity in plaintiff's home. Defendants moved to dismiss on grounds of collateral estoppel and equitable estoppel. The trial court dismissed without stating its reasons. On appeal, plaintiff contends that neither the doctrines of collateral estoppel nor equitable estoppel bar her cause of action. We agree and reverse and remand.

*The Petition*

Plaintiff, Lillie Shores, filed a petition for damages against defendants asserting breach of fiduciary duty, fraudulent misrepresentation, civil conspiracy, negligent misrepresentation, and prima facie tort. In her petition plaintiff alleged that she was an 85 year old woman who was the sole owner of her home in St. Louis, Missouri. In 1993, Marlo Wright, who is mentally challenged, moved in with her. Plaintiff was diagnosed with Alzheimer's disease in 1994. In March, 1995 defendant, Express Lending Services, Inc., through defendants Jean Kavanaugh and Christopher Kavanaugh, approached Wright about obtaining for her a home equity loan on plaintiff's home. Wright represented herself as plaintiff's daughter. Plaintiff alleged that defendants informed Wright that plaintiff would not qualify for a loan by herself, but, if Wright was added to the title, then they both could qualify for the equity loan. Defendants oversaw the execution of the quitclaim deed which made Wright and plaintiff joint tenants of the property. Defendants also arranged for plaintiff and Wright to get a loan from a finance company. Plaintiff and Wright executed a mortgage and deed of trust to the finance company for a net loan of $22,209.56. Defendants received a fee of

---

1. In this opinion "defendants" refers to Express Lending Services, Inc., Jean Kavanaugh, and Christopher Kavanaugh. The trial court dismissed Associates Home Equity Services, Inc., which is referred to as "the finance company" in this opinion, and plaintiff waived her right to appeal from that dismissal.

$1,250 from plaintiff and Wright and a fee of $1,081 from the finance company for arranging the financing. The finance company delivered the loan proceeds to Wright, who spent all but $1,091 of those proceeds. The petition further alleged that the finance company began foreclosure proceedings against plaintiff's property on November 10, 1995 for non-payment of the mortgage. On December 8, 1995 plaintiff filed a petition against the finance company to enjoin the foreclosure. The trial court granted the injunction.

*Motion to Dismiss*

Defendants filed a motion to dismiss the petition in this case on the grounds of collateral estoppel and equitable estoppel. They attached to their motion plaintiff's petition in the injunction action in which she sought to enjoin the finance company from foreclosing and against Wright to cancel the quitclaim deed, make an accounting and for damages. (hereinafter "injunction action") They also attached the trial court's judgment in that action in which the trial court permanently enjoined the finance company from foreclosing on plaintiff's property and ordered plaintiff to deliver the $1,091 still in her possession and any money she collected from Wright to the finance company. In the injunction action, the court also declared the quitclaim deed between plaintiff and Wright to be null and void and ordered Wright to repay $21,118.56 to plaintiff.

Defendants argued that collateral estoppel applied because the trial court had found defendants to be acting as the finance company's agent in the injunction action and that the issues of whether plaintiff was incompetent when she signed the deed of trust and note and whether she was induced to do so by fraud were identical to the issues in the case against defendants. They further contended that plaintiff had a full and fair opportunity to litigate the issues in the prior suit and obtained a final judgment. They argued that equitable estoppel or laches should apply because plaintiff had the opportunity to name defendants in the previous action, did not do so, and they were now disadvantaged. The trial court granted the motion without specifying the grounds therefore. Plaintiff appeals from the judgment of dismissal.

*DISCUSSION*

In separate points relied on, plaintiff contends that the trial court erred in dismissing her petition because neither collateral estoppel nor equitable estoppel bar her causes of action. When the trial court fails to specify its reasons for dismissing the petition, we presume the trial court acted for one of the reasons stated in the motion to dismiss. *City of Chesterfield v. Deshetler Homes, Inc.*, 938 S.W.2d 671, 673 (Mo.App.1997). "In addition, we will affirm the order of dismissal if any ground supports the motion, regardless of whether the trial court relied on that ground." *Id.*

I. *Jurisdiction*

First, we must sua sponte determine our jurisdiction because the trial court dismissed the petition without specifying whether it was with prejudice. Under Rule 67.03 an involuntary dismissal is without prejudice unless the court specifies otherwise in its order for dismissal. However, a party can appeal from a dismissal without prejudice if the dismissal has the practical effect of terminating the action in the form cast. *Chesterfield*, 938 S.W.2d at 673. The dismissal in this case, based on two theories of estoppel, has this practical effect and we have jurisdiction to hear this appeal.

II. *Motion to Dismiss/Summary Judgment*

Next, we must determine whether the trial court's order constitutes a dismissal or a summary judgment. Along with its motion to dismiss, defendants presented to the court the petition and judgment in the injunction action. Under Rule 55.27, when the pleadings and judgment in another case are presented to and not

excluded by the court, a motion to dismiss on the grounds of collateral estoppel or res judicata is to be treated as one for summary judgment. *King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints,* 821 S.W.2d 495, 499 (Mo. banc 1991). But, before a trial court may treat a motion to dismiss as one for summary judgment under this rule, it must first notify the parties that it is going to do so, and give the parties an opportunity to present all materials pertinent to a motion for summary judgment. Rule 55.27(a); *Gardner v. City of Cape Girardeau,* 880 S.W.2d 652, 654 (Mo.App. 1994). This requirement assures that both parties are given that opportunity. *See State ex rel. Hwy. and Transp. Comm'n v. London,* 824 S.W.2d 55, 58 (Mo.App.1991). Here, the record does not indicate that the court notified the parties that it intended to treat the motion as one for summary judgment. However, in this case, where the asserted basis for the motion was collateral estoppel and related doctrines, the material from the underlying cases is before the court, and plaintiff has not suggested any other documents were necessary to decide the question, we will treat judgment as a summary judgment. *See King Gen. Contractors,* 821 S.W.2d at 500.

### III. *Collateral Estoppel*

■ Collateral estoppel precludes the same parties, or those in privity, from relitigating issues which were necessarily and unambiguously decided in a previous final judgment. *King Gen. Contractors,* 821 S.W.2d at 500–01; *Finley v. St. John's Mercy Medical Center,* 958 S.W.2d 593, 595 (Mo.App.1998). Thus, collateral estoppel or issue preclusion, deals with the relitigation of previously decided issues in subsequent litigation brought on a different cause of action. Unlike res judicata or claim preclusion, it does not bar the subsequent claim. Issue preclusion does not

prevent a party from litigating issues that were never argued or decided as essential to the judgment in the previous proceeding. "The nature of collateral estoppel is that a fact appropriately determined in one lawsuit is given effect in another lawsuit involving different issues." *State ex rel. O'Blennis v. Adolf,* 691 S.W.2d 498, 501 (Mo.App.1985). Such a fact or issue is deemed conclusively settled. *McIntosh v. Foulke,* 360 Mo. 481, 228 S.W.2d 757, 761 (1950); *Butler v. Manley,* 416 S.W.2d 680, 682 (Mo.App.1967).

■ Defendants argue that collateral estoppel applies to bar relitigation of every issue raised in each count of this case because the same issues were raised and decided in the injunction action. To illustrate, defendants argue that Count I, which seeks damages against defendants for breach of their fiduciary duty to plaintiff in procuring the deeds and mortgage, is barred because in the injunction action the court found that Express Lending Services, Inc., one of the defendants in this action, acted as the agent of both plaintiff and the finance company and that both Express's conduct and plaintiff's incompetency were sufficient bases on which to cancel the deed.

Defendants' reliance on collateral estoppel as a defense is wholly misplaced. Plaintiff prevailed in the prior action. If collateral estoppel applies to any issue in this action it would apply in plaintiff's favor, eliminating the necessity for plaintiff to relitigate that issue.[2] *See Seaman v. Fichet–Bauche North America, Inc.,* 176 A.D.2d 793, 575 N.Y.S.2d 122, 124 (App. Div.1991). Thus, if, as defendants contend, collateral estoppel bars relitigation of the finding that defendants were agents of the parties in the injunction action, this finding would be conclusive in this action and plaintiffs would not have to reprove it. The conclusiveness of such a finding would not prevent plaintiff from asserting her

**2.** For a discussion of offensive and defensive uses of collateral estoppel, *see Adolf,* 691

S.W.2d at 502–03.

claim for breach of fiduciary duty against defendants, but would assist her in establishing her claims. In this case, collateral estoppel does not bar plaintiff's claims and does not support the trial court's judgment.

## IV. *Equitable Estoppel*

 The equitable defenses of estoppel and laches are closely related. *Stenger v. Great Southern Sav. and Loan Ass'n*, 677 S.W.2d 376, 383 (Mo.App.1984). Both are unfavored theories. *Id.* Equitable estoppel arises from the unfairness of allowing a party to belatedly assert known rights on which the other party has, in good faith, relied thereby and become disadvantaged. This defense consists of three elements: 1) an admission, statement, or act by the person to be estopped that is inconsistent with the claim that is later asserted and sued upon, 2) an action taken by a second party on the faith of such admission, statement or act, and 3) an injury to the second party which would result if the first party is permitted to contradict or repudiate his admission, statement or act. *Pinnell v. Jacobs*, 873 S.W.2d 925, 927 (Mo.App.1994). The party who asserts equitable estoppel must establish each element by clear and satisfactory evidence and we restrict the application of the doctrine to cases in which each element clearly appears. *Id.* Estoppel is not a favorite of the law and will not "arise unless justice to the rights of others demands it." *Peerless Supply Co. v. Industrial Plumbing & Heating Co.*, 460 S.W.2d 651, 666 (Mo.1970).

 Defendants contend that plaintiff knew of their fault at the time of the first action and failed to include them as defendants. Defendants argue that waiting to assert these rights has disadvantaged them because plaintiff's mental condition has deteriorated since the time of the first action. These circumstances do not support the application of equitable estoppel.

 Defendants have not shown that plaintiff acted inconsistently. Although plaintiff could have joined defendants in her action against the finance company and Wright, she was not required to do so. Plaintiff brought this action against defendants within the applicable statute of limitations for fraud in inducing a contract. The mere waiver of a privilege to assert a claim in a prior action does not plainly indicate an intention to waive and relinquish the claim itself. *Dunn v. Pickard*, 284 S.W.2d 6, 9 (Mo.App.1955). Accordingly, plaintiff is not estopped from denying a waiver. The defense of equitable estoppel does not support the trial court's judgment.

## V. *Split Cause of Action*

 Defendants contend in their brief that during the motion hearing they orally adopted the reasoning in a former co-defendant's motion to dismiss based on split cause of action. The hearing is not part of the record and plaintiff disputes whether defendants made this request. A defendant must raise the defense of splitting a cause of action at the earliest possible time; otherwise, the defense is waived. *Evans v. St. Louis Comprehensive Neighborhood Health Center*, 895 S.W.2d 124, 126 (Mo.App.1995). Even if the defense was timely raised, so that the summary judgment motion could be based on it, defendant's argument that plaintiff has split her cause of action by failing to bring her claim against them in her injunction action does not support summary judgment in their favor.

 A party may not split a cause of action which is single and file or try it piecemeal, the penalty for which is that an adjudication on the merits in the first suit is a bar to a second suit. *King Gen. Contractors*, 821 S.W.2d at 501; *Finley*, 958 S.W.2d at 595. Thus, the rule against splitting a cause of action is a form of claim preclusion or res judicata. *Evans*, 895 S.W.2d at 126.

 A claimant may, however, bring separate and distinct causes of ac-

tion separately, even if they arise out of the same transaction. *Miller v. SSI Global Sec. Service*, 892 S.W.2d 732, 734 (Mo. App.1994). Further, the prohibition against splitting a cause of action does not apply where the parties are different. *McCrary v. Truman Medical Center, Inc.*, 943 S.W.2d 695, 697 (Mo.App.1997); *Kayes v. Kayes*, 897 S.W.2d 51, 53 (Mo.App.1995).

While both of plaintiff's claims arose out of the mortgage of her home, the parties, subject matter, and required proof on the petitions in the two separate actions are not the same. In the injunction action plaintiff sought to prevent the finance company from foreclosing on her home on the ground that she was incompetent when she signed the loan documents. Plaintiff also sought equitable relief and damages from Wright for her role in obtaining a quitclaim deed to plaintiff's home, mortgaging it, and keeping the loan proceeds. In contrast, in this action plaintiff sought damages against defendants for their breach of fiduciary duty, fraud, and other tortious acts in causing her and Wright to mortgage her home. The two actions involve separate wrongs against plaintiff by different parties. The fact that they may have arisen out of a single chain of events does not make them one claim. Wright's actions in inducing plaintiff to quitclaim her property to herself, mortgaging it and keeping the money gave rise to a different claim than defendants' actions in causing both women to mortgage the property, which generated fees for themselves. Plaintiff's causes of action are separate and distinct. *Kayes*, 897 S.W.2d at 53; *Miller*, 892 S.W.2d at 734. The defense of splitting a cause of action does not support the trial court's judgment.

The judgment of the trial court is reversed and the case is remanded.

PAUL J. SIMON, P.J. and LAWRENCE E. MOONEY, J., concur.