

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| H. DAVID ROY, | ) |
| | ) |
| Appellant, | ) |
| | )   WD77615 |
| v. | ) |
| | )   OPINION FILED: |
| | )   November 3, 2015 |
| MBW CONSTRUCTION, INC., | ) |
| | ) |
| Respondent. | ) |

**Appeal from the Circuit Court of Clay County, Missouri**
**The Honorable Daren L. Adkins, Judge**

**Before Division Three:**  Joseph M. Ellis, Presiding Judge, and
Karen King Mitchell and Gary D. Witt, Judges

H. David Roy appeals the trial court's judgment in favor of Respondent, MBW

Construction, Inc., on his claims for breach of contract, unjust enrichment, negligent

misrepresentation, and violation of the Missouri Merchandising Practices Act.[1]  Roy argues that

the trial court erroneously applied the law and that its judgment was against the weight of the

evidence regarding his breach of contract and unjust enrichment claims.  Roy also argues that the

---

[1] Roy also sought damages for breach of warranty, but the court ruled in his favor on that claim as well as MBW's counterclaims.  MBW has not filed a cross appeal.

court erred in denying his motion for new trial based upon newly discovered evidence demonstrating that one of MBW's witnesses gave deliberately false testimony. We affirm.

**Background**

In 2008, Roy toured a model home built by MBW, known as the Avalon III. On October 3, 2008, Roy entered into a contract with MBW (through its president, Keith McConnell) to purchase a new home from MBW, based upon the Avalon III model, with various upgrades and alterations. The agreed-upon purchase price for the home was $490,000. Attached to the contract were various specifications for all parts of the home, including specific "allowance amounts" for items such as lighting, carpet, tile, sod, landscaping, and appliances, as well as the various alterations and upgrades from the model home. The contract provided that:

> The Purchase Price shall be automatically (i) increased by the amount of all expenditures in excess of applicable allowance amounts, (ii) decreased by the amount by which expenditures are less than applicable allowance amounts, and (iii) increased or decreased, as the case may be, as expressly provided elsewhere in this Contract.

Paragraph 8 of the contract addressed how "change orders and allowances" were to be handled by the buyer and the builder. Specifically, it provided that:

> BUILDER, at its option, may require that any net increase in the Purchase Price resulting from change orders, allowance overages and other matters be paid to BUILDER and added to the Deposit at any time prior to closing or may wait for payment to be made to BUILDER at the closing (or when later presented to BUYERS by BUILDER to the extent not included in the calculations as of the closing). Net change order amounts shall constitute an increase or decrease in the Purchase Price, as the case may be. Closing does not alleviate either party's obligation to reconcile charges or credits on any allowance, change order or other item.

Throughout construction of the home, Roy requested various alterations and made decisions regarding items for which allowances were identified. On June 16, 2009, MBW

2

emailed Roy a spreadsheet identifying costs incurred from both change orders and allowance

overages. The spreadsheet contained a total of 16 items, with a total charge of $19,316.

Two days later, on June 18, 2009, the parties executed an "Amendment to Real Estate

Sales Contract," which stated:

> THIS AMENDMENT modifies the terms of the above-referenced Real Estate
> Contract. Except for the following changes, all of the other provisions of the
> contract shall remain in full effect.
> All parties to the above referenced contract agree to the following:
>   1. Final sales price is $401,814.00.
>   2. Closing is extended to be on June 18, 2009.

The amendment further stated:

> Buyer request[s] itemized charges and receipts on the 16 overage items totaling
> $19,316 be provided within 10 working days of closing for review.
> MBW, seller, to complete the following items within a reasonable time from close
> of escrow:
>   1. Stain, finish coat and installation of Front door.
>   2. Paint to exterior color and install rear door with glass inserts.
>   3. Provide lot preparation for sod and install sod.

Items 1 and 2 were completed before closing and were scratched through and initialed on the

amendment. The parties closed on June 18, 2009, and Roy moved in the same day.

On January 8, 2010, Roy filed suit against MBW for breach of contract, unjust

enrichment, breach of warranty, negligent misrepresentation, and unlawful merchandising

practices.[2] Roy argued that MBW breached the contract by performing and charging for

unauthorized work, overcharging for authorized additional work and change orders, failing to

provide documentation and accounting of charges for additional work and change orders, failing

to provide Roy with credit for payments he had made toward change orders and overages, failing

to complete the home in accordance with the agreed specifications, and misstating the actual cost

---

[2] Because the breach of warranty judgment has not been appealed, we will not include facts related to that
claim. Additionally, the facts relevant to the negligent misrepresentation and unlawful merchandising practices will
be discussed only to the extent relevant to Roy's fifth point on appeal.

3

of allowance amounts. Roy further alleged in the unjust enrichment claim that, as a result of the alleged breaches, MBW received and retained funds at closing to which it was not entitled.

MBW asserted the affirmative defenses of accord and satisfaction, account stated, estoppel, and merger-by-deed. Neither party requested findings of fact or conclusions of law before trial. At trial, Roy testified that, even though he had doubts about the accuracy of the final sales price and the charges used to calculate it, he went through with closing because he believed that the language in paragraph 8, indicating that the "closing date does not alleviate either party's obligation to reconcile charges or credits or any allowances, change orders or other items," allowed him to challenge these calculations at a later time.

After Roy's case-in-chief, the court granted a motion for directed verdict on the unlawful merchandising practices claim. Following trial, the court issued its judgment, finding in favor of MBW on Roy's breach of contract, unjust enrichment, and negligent misrepresentation claims. The court specifically found "the testimony of [Roy] not credible." The court found in favor of Roy, however, on his breach of warranty claim, awarding him $5,200 for repairs needed to the front door and roof. The court denied MBW's two counterclaims.[3] Roy appeals.

**Analysis**

Roy raises five claims on appeal. In his first two points, he argues that the court erroneously applied the law in finding both that his claims were barred and that he was not entitled to a refund of the 16 allegedly improper overage charges included in the final sales price of the home. He argues that language in paragraph 8 of the contract specifically allowed him to raise such challenges after closing, and he was entitled to a refund due to MBW's failure to provide him with supporting invoices within 10 days of the closing. In his second two points, he argues that the court's judgment denying him credit for various items was against the weight of

_____

[3] MBW had asserted counterclaims for breach of contract and *quantum meruit*.

4

the evidence because he was entitled to the credits under the contract and MBW's evidence to the contrary lacked probative value. In his fifth and final point on appeal, Roy argues, in the alternative, that the court abused its discretion in denying his motion for new trial on the counts he did not prevail on because evidence discovered post-trial demonstrated that MBW's president, McConnell, gave deliberately false testimony supporting the underlying judgment.

**Standard of Review**

"In this court-tried case for breach of contract, the judgment of the trial court will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Asamoah-Boadu v. State*, 328 S.W.3d 790, 793 (Mo. App. W.D. 2010). "The evidence and all reasonable inferences are viewed in the light most favorable to the judgment, and all contrary evidence and inferences are disregarded." *Id*. "The appellate court defers to the trial court's credibility determinations but reviews issues of law *de novo*." *Id*.

**A. The court's judgment was not against the weight of the evidence.**

To begin, MBW argues that all of Roy's claims are barred by any one of the following doctrines: the parol evidence rule, account stated, accord and satisfaction, merger, or equitable estoppel. In his first point on appeal, Roy argues that none of those affirmative defenses apply because the express language of the contract found in paragraph 8 allowed him to raise his challenges post-closing. He relies on the following sentence found at the end of paragraph 8: "Closing does not alleviate either party's obligation to reconcile charges or credits on any allowance, change order or other item." Roy claims that this sentence allowed him to raise challenges to the final sales price, even after closing.

5

Because neither party requested findings of fact or conclusions of law before trial, as allowed by Rule 73.01, the court did not indicate the basis for its judgment against Roy, other than to state that it did not find Roy to be credible. Accordingly, we are unable to determine whether the court's judgment was an indication that Roy failed to prove his claims or a determination that MBW proved its affirmative defenses, as either theory would be consistent with the judgment. In short, it is unclear to this court how the trial court resolved the dispute regarding the meaning of the statement Roy relies upon in paragraph 8. Nevertheless, we need not resolve this matter because, even if we accept Roy's argument as to the meaning of the sentence in paragraph 8, the evidence was sufficient to support the court's judgment in favor of MBW on the merits.

Though Roy identified six ways in which MBW allegedly breached the contract, he argues only three of them on appeal; thus, we limit our discussion to only those challenges.[4] For clarity, we review the claims out of order.

*Failure to provide documentation and accounting of charges on additional work/change orders*

In his second point on appeal, Roy argues that he was entitled to a credit for the 16 additional items MBW identified shortly before closing as additional charges, totaling $19,316, because MBW failed to provide him with invoices substantiating the charges within ten days of closing as provided for by the contract amendment.

To begin, it does not appear to us that the amendment created any obligation on the part of MBW to provide this documentation. The language at issue stated only that "Buyer request[s]

---

[4] At trial, Roy argued that MBW breached the contract in the following ways: (1) by performing and charging for unauthorized work; (2) overcharging for authorized additional work and change orders; (3) failing to provide documentation and accounting of charges for additional work and change orders; (4) failing to provide Roy with credit for payments he had made toward change orders and overages; (5) failing to complete the home in accordance with the agreed specifications; and (6) misstating the actual cost of allowance amounts. On appeal, however, he argues only that MBW breached the contract as identified in (3), (4), and (5).

6

itemized charges and receipts on the 16 overage items totaling $19,316 be provided within 10 days of closing for review." But regardless of whether the amendment created an obligation, the original contract provided that "MBW will charge buyer 'cost only' on all additional items with appropriate invoice." At trial, McConnell testified that MBW had provided Roy with invoices supporting all of the 16 additional charges throughout construction. Though Roy testified to the contrary, the trial court expressly found him not credible.

"When evidence is contested by disputing a fact in any manner, [the appellate c]ourt defers to the trial court's determination of credibility." *White v. Dir. of Revenue*, 321 S.W.3d 298, 308 (Mo. banc 2010). "A trial court is free to disbelieve any, all, or none of that evidence." *Id*. "Appellate courts defer to the trial court on factual issues 'because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record.'" *Id*. at 308-09 (quoting *Essex Contracting, Inc. v. Jefferson Cty.*, 277 S.W.3d 647, 652 (Mo. banc 2009)).

Under our standard of review and the trial court's judgment, Roy's claim fails. The only evidence presented on this issue was testimony from Roy and McConnell. And the trial court credited McConnell's testimony, which demonstrated compliance with the terms of the contract, over Roy's contrary testimony. "Our deference to the trial court's factual determination 'includes facts . . . necessarily deemed found in accordance with the result reached.'" *England v. England*, 454 S.W.3d 912, 919 (Mo. App. W.D. 2015) (quoting *Ivie v. Smith*, 439 S.W.3d 189, 206 (Mo. banc 2014)).

Point II is denied.

*Failure to provide credit for payments Roy made toward change orders and overages*

In his third point on appeal, Roy argues that he was entitled to a credit on the final price for payments he made during construction for landscaping, carpeting, and painting. The gist of his argument is that MBW failed to provide sufficient allowances for these items to reflect the actual cost of the items as they appeared in the model home. In other words, Roy argues that MBW misrepresented its cost for these items in the model home when it established the allowance amounts under the contract. Accordingly, Roy now believes that he is entitled to a dollar-for-dollar credit for the money he spent on these items, despite the fact that his costs exceeded the stated allowances and specifications in the contract. We disagree.

To begin, the court rejected Roy's claim for negligent misrepresentation regarding any discrepancy between allowance amounts and actual expenditures on the model home. Roy has not appealed that ruling; thus, it cannot be the basis for his claims regarding breach of contract and unjust enrichment.

In any event, as to allowances, the contract provided: "Stated allowance amounts supersede any stated specifications or drawings. If BUYERS select an allowance item in excess of the allowance amount, BUYERS shall, if requested by BUILDER or the supplier, pay the excess amount directly to the supplier as a Non-Refundable additional Deposit." The contract further provided: "'Non-Refundable' means, with respect to a payment, that BUYERS shall not be entitled to a return of the payment under any circumstances other than after a termination of this Contract by BUYERS under Section 16 or Section 27(b) below."[5]

Roy was actually given credit in the following amounts, based upon the specifications in the model home and specific allowances within the contract: $750 for landscaping, $4,852 for

---

[5] Section 16 allowed for termination by the buyer for incurable (or uncorrected) and unacceptable title defects. Section 27(b) allowed for termination by the buyer for material and uncorrected breaches of contractual terms by the builder.

carpeting, and $19,500 for painting. These credits totaled $25,102. The total cost for these items was $26,134, leaving an overage of $1,032.

The evidence at trial, viewed in the light most favorable to the judgment, demonstrated that, despite the credits given, Roy was actually entitled to only $21,682.44 in credits. MBW did not provide any landscaping, so Roy did not use the $750 allowance provided; thus, he was entitled to a credit in that amount. MBW acknowledged a miscalculation in the allowance amount of $4,852 for carpet and indicated that Roy should have been given credit for $5,168.44. And, though Roy was given a $19,500 credit for paint, the budget amount based upon the model home was actually $15,764. Thus, Roy was given an additional $3,736 credit on painting to which he was not entitled.[6] Under the corrected allowance amounts, Roy was over budget by $4,451.56.

In short, Roy was over budget regardless of which figures the court relied on: he was $1,032 over budget based upon actual credits given, and he was $4,451.56 over budget based upon the credits to which he was entitled. In either event, Roy is not entitled to any further credit on these items, and the trial court's judgment is not in error.

Point III is denied.

*Failure to complete the home in accordance with the agreed specifications*

In his fourth point, Roy argues that he was entitled to credits based upon alleged errors in the construction of the garage and laundry room cabinetry. Roy claims that MBW failed to install the laundry room cabinets as required by the contract to reflect the model home and that

---

[6] Roy argues that he was entitled to a credit in the full amount of $19,812 that he paid to the painter because his paint specifications were to be the "same as model." Though the words, "same as model," were included in the specification sheet for his home, the paint specifications were not, in fact, the same as the model home. The model home provided for "2 paint color wall selections"; Roy's home, however, provided for "3 paint color wall selections" and "2 exterior paint color selections."

9

MBW breached a specification requiring the third-car garage to be a minimum of 24 feet from front to back in the interior. MBW argues that this claim is barred by estoppel. We agree.[7]

"'Equitable estoppel arises from the unfairness of allowing a party to belatedly assert known rights on which the other has, in good faith, relied thereby and become disadvantaged.'" *Ditto, Inc. v. Davids*, 457 S.W.3d 1, 17 (Mo. App. W.D. 2014) (quoting *Shores v. Express Lending Servs., Inc.*, 998 S.W.2d 122, 127 (Mo. App. E.D. 1999)).

> This defense consists of three elements: 1) an admission, statement, or act by the person to be estopped that is inconsistent with the claim that is later asserted and sued upon, 2) an action taken by a second party on the faith of such admission, statement or act, and 3) an injury to the second party which would result if the first party is permitted to contradict or repudiate his admission, statement or act.

*Id.* (quoting *Shores*, 998 S.W.2d at 127). "The representation may be manifested by affirmative conduct in the form of acts or words, or by silence amounting to concealment of material facts." *Comens v. SSM St. Charles Clinic Med. Group, Inc.*, 258 S.W.3d 491, 497 (Mo. App. E.D. 2008). "To amount to concealment, these material facts must be known to the party estopped and unknown to the other party." *Id.*

Here, Roy complained about the garage during construction, suggesting that it did not meet the specifications because he could not fit his boat into the third-car garage. Following Roy's complaints, MBW extended the garage, *at no additional cost*, to make sufficient room for Roy's boat. Roy also requested that MBW remove a portion of the laundry room that was built out into the third-car garage, to make the garage larger and provide more room for the boat. MBW complied. Because of the removal of this build-out, the cabinetry meant to be in the

---

[7] In analyzing this claim under the estoppel theory, we make no comment on the effect of the statement Roy relies upon in paragraph 8. We believe the statement in paragraph 8 refers only to change orders and allowances. The claims at issue in this point are based upon contractual specifications—not change orders or allowances. Thus, not even paragraph 8 would allow Roy to raise this claim at this point.

laundry room could no longer fit. Roy made no further complaints about either the garage or the laundry room and instead proceeded with closing.

By his silence and acceptance of the deed, Roy represented to MBW that he was satisfied with the garage and laundry area as built. MBW relied upon this representation in transferring ownership of the property to Roy at closing. If Roy were able to pursue this claim now, MBW could be liable for up to $5,595 (the amount of damages Roy claims he has suffered). The evidence presented demonstrated that Roy was estopped from challenging the construction of either the garage or laundry room. Thus, the trial court's judgment was not erroneous.

Point IV is denied.

Because Roy was not entitled to relief on any of the claims he has challenged in his breach of contract and unjust enrichment actions, Point I is also denied.

**B. The court did not abuse its discretion in denying Roy's motion for new trial.**

In his final point on appeal, Roy argues that the trial court abused its discretion in denying his motion for new trial due to allegedly newly discovered evidence that he claims proved that MBW witness McConnell gave deliberately false testimony. The basis for Roy's claim is that McConnell testified that a footer had been placed for a proper foundation for the garage floor extension, but inspection conducted post-trial revealed that no such footer existed.

"Motions for new trials on the ground of newly-discovered evidence are entertained reluctantly, examined cautiously, and construed strictly." *Chapman v. King*, 396 S.W.2d 29, 36-37 (Mo. App. 1965) (internal citations omitted). "For courts ever have been mindful not only of the temptation to parties smarting under defeat to make them, and . . . of the facility with which plausible grounds are manufactured but also of the fact that, if the discovery of new, material evidence alone would be ground for new trial, there would be no end to litigation,

11

whereas public policy requires that litigation sometime end." *Id*. at 37 (internal quotations and citations omitted). "So it is that our appellate courts repeatedly have said that such motions are to be tolerated, but not encouraged; viewed with aversion, rather than with favor; and granted as an exception, but refused as a rule." *Id*.

> A new trial should not be awarded on the ground of newly-discovered evidence unless the moving party first satisfies the following prerequisites . . . by showing (1) that the evidence has come to his knowledge since the trial, (2) that his failure to learn of such evidence sooner was not due to want of diligence, (3) that such evidence is so material that it probably would produce a different result if the new trial were granted, (4) that it is not cumulative only, (5) that the object of the testimony is not merely to impeach the character or credit of a witness, and (6) that the affidavit of the witness himself is produced or its absence accounted for.

*Id*. "The ruling of an after-trial request predicated on newly-discovered evidence rests largely in the sound discretion of the trial court; and, unless there has been a clear abuse of that discretion, the appellate court will not interfere." *Id*. (footnote omitted). "Any doubt as to whether the trial court's discretion has been exercised soundly in a given situation must be resolved in favor of the ruling made." *Id*.

The trial court did not abuse its discretion in denying Roy's motion for new trial for two reasons. First, Roy made no allegation or showing that his failure to discover this evidence earlier "was not due to want of diligence." Second, the object of the evidence is merely to impeach the character or credit of McConnell, as it did not go to any of the counts raised in the petition. Accordingly, the trial court did not abuse its discretion.

Point V is denied.

**Conclusion**

The trial court committed no error in entering judgment in favor of MBW on Roy's claims in Counts I and II of his petition, and the court did not abuse its discretion in overruling

Roy's motion for new trial on the ground of newly discovered evidence. Its judgment is affirmed.

_____
Karen King Mitchell, Judge

Joseph M. Ellis, Presiding Judge,
and Gary D. Witt, Judge, concur.